In the Matter of the Estate of CHARLES E. KELLEY, Deceased.

Surrogate's Court, Putman County, September 2, 1936.

*Edward V. McKeown,* for Neal Dow Becker, executor.

*Ryder & Donohoe* [*Willis H. Ryder* of counsel], for Etta Heathman.

*Philip A. Mylod,* for George W. Donaldson.

*Bond & Babson* [*Walter H. Bond* of counsel], for Alice J. H. Kelley.

*Newman & Bisco* [*Martin L. Stein* of counsel], for the Manufacturers Trust Company.

BAILEY, S. This is a discovery proceeding instituted by the executor and involves 900 shares of common stock and 204 shares of preferred stock of Fairview Foundry, Inc., standing in the name of decedent but in possession of the Manufacturers Trust Company of the city of New York.

The facts in respects to the many and varied transactions of the decedent affecting the stock in question are set forth at length in the petition, the affidavit in support of the petition and in the narrative and stipulation of facts dictated to the record upon the return day.

The parties before the court besides the executor who have or claim to have an interest in the stock in question are as follows:

George W. Donaldson, who had a contract with decedent to purchase the stock for $22,500 and who had paid $15,000 on account of the purchase price.

Etta Heathman, who had turned over certain funds to decedent for investment and who was advised by decedent in 1929 that he was investing $2,500 of her money in stock of Fairview Foundry, Inc.

The Manufacturers Trust Company, which has actual possession of the stock but which refuses to deliver it to the executor because it has been advised by the widow that she claims a lien upon the stock.

Alice J. H. Kelley, widow of the decedent, who claims that she should be subrogated to the rights of the bank in the stock. Her claim arises by reason of the fact that following decedent's death the bank, in pursuance of a guaranty of decedent's indebtedness executed by the widow in September, 1932, deducted from the proceeds of a life insurance policy of which the widow was beneficiary, the sum of $5,000, and thereby paid itself decedent's indebtedness represented by a note for which it held the aforesaid insurance policy and this stock as collateral.

The record shows that Donaldson's contract to purchase the stock was made on January 9, 1935; that he was to make such payments on account of the purchase price as would enable decedent to satisfy the bank, where most of the stock was deposited as collateral to his note; and that his indebtedness to the bank at that time was $12,600. That payments amounting to $15,000 were made by Donaldson between January, 1935, and July, 1935. Decedent died August 3, 1935, and still owed the bank $5,000 on account of his loan.

No one claims a lien on the stock except the widow. Donaldson consents that the stock be delivered to the executor to enable him to fulfill the contract of sale and submits that he is prepared to pay the balance of the purchase price upon delivery of the stock.

The claimant Heathman does not seek to impress any trust which would interfere with the performance of the contract made by decedent and Donaldson, but claims a lien on the proceeds.

We have then left to consider only the widow's claim to subrogation.

The widow claims that by application of the doctrine of subrogation she is entitled to a lien on the stock.

Subrogation is invoked to promote justice and equity and has been called the " mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it." It should only be allowed where it will not work injustice or disturb the rights of other creditors of a common debtor. (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220 N. Y. 137.)

Inasmuch as the doctrine of subrogation is based upon justice, equity and good conscience, I cannot see that any of these elements will be served by imposing a lien on this stock in favor of the widow, to the exclusion of Donaldson, who contracted to purchase the stock and who has paid a substantial part of the purchase price, nor to the exclusion of claimant Heathman, to whom decedent wrote in 1929 that her funds were being used in his original purchase of the stock.

It is my opinion that the facts in this case are distinguishable from those decisions which hold that a widow's right to the proceeds of an insurance policy cannot be defeated by the rights of creditors of the estate. My reasons are based upon the following facts:

1. The policy was assigned to the bank as collateral for decedent's note.

2. An instrument purporting to change his beneficiaries was executed at the same time but the only change effected was to provide that his designation of beneficiaries was subject to the assignment of the policy to the bank.

3. The unconditional guaranty by the widow of her husband's obligations to the bank.

4. The receipt by decedent of $15,000 from Donaldson which, if applied in reduction of the bank loan, would have paid the entire note, released the stock and left the proceeds of the policy unimpaired.

It will, therefore, be directed in this proceeding that the stock standing in the name of the decedent and in possession of the Manufacturers Trust Company be delivered to the executor to enable him to carry out the terms of the contract with George W. Donaldson.

The question as to whether the widow and the claimant Heathman have any claim to reimbursement from the proceeds of the sale of the stock or from the general assets of the estate, and the priority of such claims is not properly before the court in this proceeding; other creditors, preferred or otherwise, are concerned with these questions and should have an opportunity to be heard.

Submit order in accordance with this opinion.