GEORGIA ETTA CHAMBERLIN, Plaintiff, *v.* FIRST TRUST AND DEPOSIT COMPANY, as Executor, etc., of GARDNER J. CHAMBERLIN, Deceased, Defendant.

Supreme Court, Onondaga County, November 1, 1939.

*Fraser Brothers*, for the plaintiff.

*Hiscock, Cowie, Bruce & Lee*, for the defendant.

KIMBALL, J. The facts are not in dispute. The plaintiff is the widow of Gardner J. Chamberlin and the designated beneficiary in the two policies upon his life in the Equitable Life Assurance Society of the United States, one in the amount of $10,000

and the other in the amount of $12,000. The defendant is the executor of the last will and testament of said Chamberlin. On May 11, 1938, the decedent made and delivered his promissory note to the Syracuse Trust Company whereby he agreed to pay upon demand the sum of $20,000 which on that day he borrowed. By the terms of the note he " pledged as collateral security " the two policies in question, together with three others. On the same day the decedent and this plaintiff executed to the said trust company assignments of the two policies " issued by the Equitable Life Assurance Society of the United States with all rights therein, and with all money now or hereafter due or payable thereon, and all dividends, options, benefits or advantages derived therefrom, including the right to surrender said policy at any time and to receive and receipt for the surrender value thereof."

Gardner J. Chamberlin died on January 24, 1939, while said two policies were in force. Letters testamentary were duly issued upon his estate to the defendant on January 31, 1939. The note being unpaid at the decedent's death, his executor, the defendant herein, on March 16, 1939, paid to the Syracuse Trust Company the principal of the note together with interest, amounting in all to $20,166.67, out of the general assets of the estate. On that date the Syracuse Trust Company duly executed and delivered instruments as to both policies aforesaid by which it released all of its interest in the policies, " whether acquired by assignment or otherwise."

This action was originally brought against the Equitable Life Assurance Society of the United States. That company paid the proceeds of the policies into court and the action was continued against the present defendant. The plaintiff demands judgment that she is entitled to the proceeds of the policies so deposited in court, in the amount of $22,339.90. The defendant, as executor of Chamberlin, answers that, it having paid the amount of the note and interest out of the assets of the estate, it is entitled to be reimbursed from the proceeds of the policies which had been pledged as collateral for the payment of the note, and demands judgment that it is entitled to $20,166.67 of the $22,339.90 deposited in court.

Upon the undisputed facts, therefore, the controversy between the plaintiff and the defendant becomes a question of law to be determined upon this motion for judgment on the pleadings. I do not think the question presented has heretofore been decided in this State.

In the determination of the respective rights of the two claimants to the proceeds of the insurance policies certain facts must be kept in mind. The assignment of the policies was absolute in form,

but it is conceded that the effect of the assignments was merely to give the lender trust company collateral security for the payment of the note. The note itself recognizes this. The plaintiff was in no way obligated to pay the note. She was neither a maker, indorser nor guarantor. The policies reserved to the insured the right to change the beneficiary. When the policies were written the plaintiff was named as sole beneficiary, and that designation was never changed by the insured. I do not think that the fact that the plaintiff executed, along with her husband, the assignments to the lender trust company added anything to their effectiveness, so far as the rights of the lender trust company were concerned. The controversy here is solely between the named beneficiary and the executor of her husband's will. The rights of the lender trust company are not involved. Whether, if the note had remained unpaid, the lender trust company would have had the right to seek recovery, at its option, either from the proceeds of the policies or from the general assets of the estate, is unimportant, in my opinion, as bearing upon the rights of the parties to this action. It seems to me that the answer to the question is to be governed by the legal effect to be given to the assignments. The plaintiff's position is that the lender trust company had a pledgee's lien merely and that the primary obligation to pay the note rested upon the borrower during his lifetime and at his death upon his general estate, represented by the defendant executor. The defendant's position is stated in its memorandum to be that " The insurance company was directed to pay the proceeds of the policies to the Syracuse Trust Company. * * * The effect of these assignments was that Chamberlin directed the insurance company to pay his debt to his creditor and the remaining balance to the plaintiff."

The decision in *Davis* v. *Modern Industrial Bank* (279 N. Y. 405) has established the law in this State that an assignee of a policy which reserves to the insured the right to change the beneficiary and to assign the policy secures a right in the proceeds of the policy superior to the rights of the named beneficiary in a case, as there, where the beneficiary did not consent to the assignment. In the instant case the beneficiary joined in the assignments. Whether the form of the assignments complied with the provisions of the policy or whether the beneficiary may take advantage of a deviation in the prescribed manner of asignment is immaterial here. The *Davis* case seems to reject the New Jersey, or vested interest, rule, and to adopt the rule that the beneficiary has a mere expectancy or vested interest subject to be divested or an inchoate right depending upon the will of the insured; it does not hold, however, that the named beneficiary has *no* interest in the policy.

If, therefore, the plaintiff had an expectant or inchoate interest, as I think she had, that interest would have become absolute or choate (if I may use that word) upon the death of the insured, in the absence of the assignments. She would have taken the proceeds of the policies to the exclusion of every other person. There had never been a change of beneficiary. Chamberlin had made these policies payable to his wife upon his death. Presumably, he wanted her to have the proceeds free from the claims of his creditors. (Insurance Law, § 55-a.) By stress of circumstances he pledged the policies to secure the indebtedness as he had the right to do. These assignments gave to the bank certain rights in the policies and the proceeds thereof which were superior to the expectant rights of the plaintiff. But did these assignments effect a direction that his note should be paid exclusively out of the proceeds of the policies and not out of his general estate? I think not.

The rights given to the lender trust company by these assignments were not absolute rights. They were contingent in their exercise by the lender trust company upon failure of the maker to pay the note. The said lender trust company concededly could not insist upon being paid out of the proceeds of the insurance where, as here, it was tendered payment by the executor. The primary obligation was the promise contained in the note. If that promise was fulfilled and the indebtedness was paid, the collateral was necessarily released. The assignments then were as though never made. The direct security for this indebtedness was the promise of Chamberlin to pay. If that failed, the lender trust company could fall back upon the collateral pledged. " Collateral security, in bank phraseology, means some security additional to the personal obligation of the borrower." (Black's Law Dict. [3d ed.] 349.)

If, then, the insured pledged these policies for security additional to the primary obligation which was his promise to pay, and if it be held that the collateral could not be used unless and until there was a default in performing the primary obligation, it follows that the primary fund from which the note should be paid was his estate, in the absence of a clear and unequivocal direction to the contrary. I do not think that the mere assignment of the policies in this case constituted a direction to the insurance company to pay the note to the lender trust company. Chamberlin could very easily have accomplished that had he so desired. He could have made the lender trust company the beneficiary of the policies. He could have indicated in some way that the insurance money should be the primary fund from which the note was to be paid. He could have revoked the designation of his wife as beneficiary

and redesignated her the beneficiary of the policies subject to the assignments, thereby diminishing her interest in the policies *pro tanto*, in which case, as was held in *Matter of Kelley* (251 App. Div. 847), the lender trust company would have been constituted the primary beneficiary and the wife the secondary beneficiary. These and other things he might have done, but he did none of them. The wife in the case at bar was from the inception of the policies in question the primary beneficiary. Her status as such was never disturbed. All that happened was that a pledgee's lien was placed against the policies and their proceeds. The effect and the purpose of this lien were to stand behind the insured's primary obligation to pay his note. If he paid the note, or if, after his death, it was paid from his estate, the lien vanished. The expectant or inchoate interest of the wife, by whatever name it is called, became absolute upon the insured's death, subject only to the pledgee's lien. The fact of the death of the insured did not effect a change in the nature of the lien. If it was a pledge as collateral only during the insured's lifetime it was no more than that after his death. The plaintiff then became the sole person entitled to the proceeds of the policies, subject only to the lien. The primary obligation having been paid by the executor, as it should have been, the proceeds of the policies were entirely the wife's as beneficiary.

No reported case in this State has come to my attention which is authority for the conclusion which I have reached. However, Ohio and New Hampshire seem to have reached the same conclusion. (*Barbin* v. *Moore*, 85 N. H. 362; 159 A. 409; *Katz* v. *Ohio National Bank*, 127 Ohio St. 531; 191 N. E. 782; see, also, *Farracy* v. *Perry*, [Tex. Civ. App.] 12 S. W. [2d] 651), and it seems to me to be in accord not only with reason and justice but also with the announced public policy of this State as expressed in section 55-a of the Insurance Law, which fosters and protects the rights of beneficiaries in policies of life insurance.

The plaintiff should have judgment against the defendant upon the pleadings. So ordered.