In the Matter of the Accounting of LINCOLN ROCHESTER TRUST COMPANY, as Executor of FRANK P. VAN HOESEN II, Deceased.

Surrogate's Court, Monroe County, July 30, 1948.

*James G. Dale* for executor, petitioner.

*Robert F. MacCameron* and *James O. Shetterly* for Kathleen V. McDonald, claimant.

*Sidney K. Backus,* special guardian for Sandra A. Van Hoesen, infant, respondent.

WITMER, S. Upon this judicial settlement proceeding the testator's widow seeks reimbursement for certain advances, in excess of $27,000, which she claims to have made in payment of estate obligations, and she also resists petitioner's application to have her charged with the share of the estate taxes attributable to life insurance benefits received by her on testator's death. The claim for reimbursement will first be considered.

Testator died February 3, 1946. On April 5, 1946, claimant, his widow, paid the sum of $112.61 for 1945 State income taxes and the sum of $191.69 for 1945 Federal income taxes. On April 16, 1946, she paid $114 for stenographer's minutes of the investigation of the circumstances of the testator's death in Chicago; and she also advanced $22.50 on the cost of the marker for testator's grave. Petitioner admits the validity of these claims, totaling $440.80, plus interest from date of payment; and in the brief submitted by its attorneys it is stated that the payments were made with the knowledge and at the request of petitioner. The special guardian questions the validity of these claims, asserting that claimant was a mere volunteer and as such has no right to reimbursement. In view of the aforementioned statement by petitioner's attorneys, the special guardian's position is untenable. He will, however, be given an opportunity to show that such statement is not the fact with respect to the stenographer's minutes. Since the widow has an interest in the

estate, it can hardly be said that she was an officious inter-meddler in making these payments insofar as they were necessary and for the benefit of the estate; and even if the executor did not know of and request such payments, the claims should be allowed to that extent. The need of the minutes was a matter within the sound discretion of the executor, and in the absence of proof before entry of decree hereon that the discretion was not exercised or was abused, the claim therefor will be allowed.

The rest of the widow's claims arise out of her payment of testator's three notes. Testator had given two of. these notes to petitioner bank. On April 15, 1946, there was owing and claimant paid thereon to petitioner the sum of $18,339.13. Testator had given the other note to the Seattle First National Bank of Washington. On April 5, 1946, there was due and claimant paid thereon to said bank the sum of $8,799. Claimant asks interest at 4% per annum on these claims from the respective dates of payment.

Testator had ten policies of life insurance in the total face. amount of $93,500. One of these policies in the sum of $16,000 was made payable to his estate subject to an assignment to a bank to secure a substantial loan. The estate received the net proceeds of this policy after the bank loan was satisfied. The remaining nine policies were made payable to the testator's wife, the claimant herein. Four of them, having a face value of $50,000, were unencumbered, and the widow received payment thereof in full. Another policy in the amount of $10,000 was assigned to the Seattle First National Bank of Washington to secure the loan above mentioned. The remaining four policies, totaling $17,500, and 225 shares of common stock of F. P. Van Hoesen Co., Inc., owned by the testator, were pledged with petitioner to secure the two notes paid by claimant as shown above. It appears that claimant preferred the terms of the five pledged policies, had an interest in preserving them, and hence used part of the funds derived from other policies to pay the three notes and secure the benefits under these policies. The policies pledged to secure the two notes to petitioner were insufficient to pay such notes, and even had claimant not elected to preserve such policies and had the bank applied the proceeds thereof to the notes, the estate would have been compelled to pay the balance due on the notes or it would have been necessary to sell part of the pledged stock to pay off the notes. Of course the bank could have sold part of the stock in payment of the notes and released the four insurance policies to the widow. The widow's action saved the stock from such sale, and the estate has had over $4,000 of dividends upon the stock as a whole.

The widow claims to be subrogated to the rights of the two banks to collect the notes from the estate, she having paid the banks to save the security. The special guardian argues that the action of the claimant in paying the notes was that of a mere volunteer, and that she has no right of subrogation. He cites *National Bank of Ballston Spa* v. *Board of Supervisors* (106 N. Y. 488, 494), *Flynn* v. *Hurd* (118 N. Y. 19, 26), and cases cited therein; *Newburgh Savings Bank* v. *Town of Woodbury* (173 N. Y. 55) and *Matter of Kelley* (160 Misc. 421, affd. 251 App. Div. 847). Petitioner contends that by reason of the assignments of the policies, as a matter of law claimant has no right of subrogation, and it relies upon *Matter of Kelley* (251 App. Div. 847, *supra*) and the dictum in *Chamberlin* v. *First Trust & Deposit Co.* (172 Misc. 472, 475).

The argument of the special guardian overlooks the fact that the widow had a valid interest in the collateral which she preserved by making the payments. She was not a mere volunteer or officious intermeddler. (*Durante* v. *Eannaco,* 65 App. Div. 435; *Hardy* v. *Berger,* 76 App. Div. 393, 398; 60 C. J., p. 725.) Having a substantial legal interest in the insurance and in the stock by virtue of her interest in the estate, she had a right to protect that interest, and if in doing so she paid debts which the estate was legally obligated to pay to the banks, she became entitled to be subrogated to the banks' claims. (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr,* 220 N. Y. 137, 143–144; *Gerseta Corporation* v. *Equitable Trust Co.,* 241 N. Y. 418.) In the *Gerseta* case (*supra*) at pages 425–426, the court said: " Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability."

It would seem, therefore, that it remains to determine only whether the testator's estate was obligated to pay the notes to the banks which claimant paid. The answer is apparent. The testator would hardly have given the notes in the normal course if they did not represent legal obligations to pay. All of the assignments of insurance were made as collateral security for the payment of the respective notes, as was the assignment of the stock. The primary obligations were the notes.

But it is said that the doctrine of subrogation is equitable and will not be invoked unless in equity and good conscience it should

be applied (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr,* 220 N. Y. 137, 144, *supra*; *Arnold* v. *Green,* 116 N. Y. 566), and that in this case the testator intended that these obligations should be paid out of the proceeds of the insurance policies securing them, and that his estate should, at most, be only secondarily liable. It is sought to sustain this argument by showing the relative size of testator's personal estate and pledged and unpledged life insurance at the times of the loans and since his death; and also by the language of some of the assignments and accompanying changes of the beneficiaries. Varying sizes and conditions of estates may have a bearing upon the intent of testators in their lifetimes, but the rules of law must remain the same, subject only to such intent; and it is not apparent how the condition of this estate bears upon testator's intent with reference to the payment of these notes. Some of the designations of beneficiaries were changed to read, "the proceeds (subject to the prior claim of * * * assignee) shall be paid to my wife * * *". In the assignments of the four insurance policies pledged to petitioner "the sole right to collect" the proceeds was granted to such bank. In the assignment of the policy to Seattle First National Bank of Washington it was provided that " the undersigned hereby irrevocably authorize(s) and direct(s) the Company to pay to the Assignee any and all moneys now or hereafter due under this policy to the extent, but only to the extent, of the indebtedness secured hereby * * * ". The assignments were obviously and admittedly made as collateral security; and here again it is not apparent how the language referred to authorizing payment of the proceeds of the policies to the assignees bears upon testator's intent with reference to the primary obligations to pay the notes. In the absence of a clear showing of an intent on the testator's part to relieve the estate of the burden of these notes and to diminish the insurance benefits to his widow, subrogation must be allowed. (*Wagner* v. *Thieriot,* 203 App. Div. 757, 759, affd. 236 N. Y. 588; *Chamberlin* v. *First Trust & Deposit Co.,* 172 Misc. 472, *supra*; *Matter of Reinhold,* 68 N. Y. S. 2d 347; *Matter of Jones,* N. Y. L. J., June 8, 1945, p. 2205, col. 3, FOLEY, S.; *Matter of Blackman,* 188 Misc. 390.)

The decision in *Matter of Kelley* (160 Misc. 421, affd. on other grounds 251 App. Div. 847, appeal denied 276 N. Y. 689, *supra*) has no application in this case. Undoubtedly, had the testator designated the bank in each instance as the first unconditional beneficiary in a specified amount, the wife's interest in the policy would have been diminished to the extent fixed in such designa-

tion. But that clearly was not what was done or intended here. Neither bank ever accepted a designation of itself as beneficiary in satisfaction, in whole or in part, of its claim against the testator. Even such designation would not be necessary had the testator chosen to state in clear language that he wished to diminish claimant's interest in the policies. He did not see fit to do this, and the court cannot do it for him.

Another aspect of the claims with respect to the notes held by petitioner is that the insurance was insufficient to pay such notes; and even if there were no personal obligation on the notes (which is not the fact) the matter of how the bank should be paid would depend upon which security the bank should decide to use. Since there was a personal and primary obligation on each of the notes, this argument applies to them all; and to deny subrogation in respect of any of the obligations would leave to the caprice of the banks the determination as to which party should ultimately pay these debts. That, of course, cannot be permitted.

There is something incongruous in this whole situation. Had the testator borrowed from the insurance companies directly the interest of the widow as beneficiary would automatically have been reduced by the extent of the loans. (*Wagner* v. *Thieriot,* 203 App. Div. 757, affd. 236 N. Y. 588, *supra*; *Matter of Hayes,* 252 N. Y. 148.) It hardly seems right that a different result should be reached when the insured, in order to get a better loan in amount or rate of interest or both, borrows from a bank. This problem has been before the Surrogates' Association of the State of New York which has recommended that legislation be enacted similar to that contained in section 20 of the Decedent Estate Law and section 250 of the Real Property Law to correct this situation, but as yet no such enactment has been made. This court cannot take the place of the Legislature. Claimant's said claims, therefore, are allowed in full with interest at 4% as requested, except that under the circumstances such interest allowance may not exceed the rate of total interest and dividend earnings of the estate during the period of administration.

We come now to the question of apportionment of the estate taxes. Petitioner has paid the estate taxes on the whole estate, including that assessed by reason of the life insurance passing outside of the will, and seeks to charge the widow with her proportionate part based upon the estate assets she received dehors the will. It appears that the testator had a power of appointment under his father's will but failed to make specific reference to it in his will, and the residuary clause in his will

was ineffective to execute the power, so that in default of appointment the property went to this testator's daughter, the respondent herein. (*Matter of Van Hoesen,* 67 N. Y. S. 2d 503.) The value of this appointive property was carried in the trust at $54,000, but has since been estimated to be $36,000. The testator took out $50,000 of his life insurance quite some time after making his will. His wife was the beneficiary of all of it and he did not assign or encumber it.

Section 124 of the Decedent Estate Law requires apportionment " except in a case where a testator otherwise directs in his will ".

Paragraph " Fourteenth " of the testator's will provides: " I direct that any and all legacy, succession or inheritance taxes payable by my estate or in respect of any interest under this my Will, by reason of any State or Federal Laws now or hereafter in force, be paid by my Executor out of my estate as part of the expenses of administration thereof."

By the foregoing provisions of his will the testator clearly provided that there should be no apportionment of estate taxes with respect to the bequests contained in his will. Petitioner and the special guardian contend that the provision has no relation to the transfer taxes assessed by reason of the property passing outside of the will, and that such must be apportioned. Under the statute the taxes must be apportioned unless the will " otherwise directs ". Does the provision in the will above quoted amount to such a direction against apportionment?

In *Matter of Mills* (189 Misc. 136, affd. 272 App. Div. 229, 233, affd. 297 N. Y. 1012) the testator provided against apportionment as follows (p. 232): " I direct that all estate, inheritance, transfer and succession taxes imposed upon my estate or any part thereof, or the transfer thereof or any right of succession thereto, be paid out of my general estate." Surrogate DELEHANTY and the Appellate Division each wrote opinions, holding that such provision was not a direction against apportionment of the tax with respect to the property passing outside of the will. The Appellate Division said at page 233: " The legislative history of the statute as well as its language indicates that apportionment is the rule to which exception is allowed only if there be clear direction to the contrary. The purpose of the statute is equitable and reasonable to provide that those who receive benefits should normally bear their proportionate burden of the taxes and not impose them without clear direction on residuary legatees who are often the testator's wife or children the natural objects of

his bounty. We agree with the Surrogate to the extent of holding that the clause in question is at least ambiguous and in the absence of a clear and unambiguous direction against apportionment, the mandate of the statute must prevail."

In *Matter of Kaufman* (170 Misc. 436) the will provided: " I direct that all estate, transfer and succession taxes and duties shall be a charge upon and payable out of my residuary estate." Surrogate Delehanty there directed apportionment of the tax with respect to the property passing outside of the will, and said at page 440: " In the absence of specific words directing non-apportionment strong showing must be made that an intent to effect an inequitable apportionment is clearly disclosed in the will. Language of doubtful import — that is, language which is subject to interpretation either way — will not suffice to change the rule of apportionment commanded by the statute." To the same effect see *Chase National Bank* v. *Tomagno* (172 Misc. 63, 65–66).

The cases cited in the respective briefs herein show that there has been considerable wavering on this question on the part of the courts, and that slight and nebulous differences have been found sufficient to allow or deny apportionment. As indicated in the opinion of the Appellate Division in the *Mills* case (*supra,* p. 234) it will serve no useful purpose to discuss these decisions at length. Many of them are set forth in *Matter of Kalik* (179 Misc. 872). In this case Surrogate Foley discussed the two separate lines of decisions on this subject. He had before him a will provision much stronger against apportionment than the one at bar, and still he ordered an apportionment of the taxes with respect to the property passing outside of the will.

*Matter of Mills* (*supra,* p. 232) is sufficiently like the case at bar to be controlling. There the will referred to " all estate, inheritance, transfer and succession taxes *imposed upon my estate or any part thereof* ". (Italics supplied.) The Appellate Division said (p. 233) that the provision against apportionment is " broadly inclusive as to the type of taxes involved but is expressly limited and qualified as to the kind of property referred to. The broad language relating to taxes is limited by the qualifying phrase ' imposed upon my estate ' ". In the instant will the testator said " payable by my estate ". It is difficult to see a distinction between the words " imposed upon my estate " and " payable by my estate ". Indeed, the argument against apportionment is stronger in the *Mills* case because there the testator added the words " or any part thereof ".

The use of the words " my estate " in two instances in the provision in question fortifies the position of the petitioner. Without doubt, in using it the second time in such provision the testator was referring to his true estate. Where the same language is used in different places in a will, and particularly in the same sentence, it is presumed that the testator meant such words to have the same meaning in each instance. (*Matter of Durant*, 231 N. Y. 41, 48, 50; *Matter of Mills*, 272 App. Div. 229, 233, *supra*.) In *Matter of Durant* (*supra*) Judge CARDOZO said at pages 49, 50: " I know that what we speak of as the intention of the testator is often, in reality, the intention of the draftsman of the will, if, indeed, the situation, afterwards arising, was within the range of thought at all. I think we can hardly err, however, in imputing the desire alike to draftsman and to signer that the same words should preserve the same meaning through the successive paragraphs of the instrument which one drafted and the other signed."

Claimant further contends that the use of the word " or " after the word " estate " was designed to distinguish between his total taxable estate and the property passing under the will. The order in which the phrases appear and the general context do not support this construction; and this case is clearly distinguishable from *Matter of Aldrich* (259 App. Div. 162) and *Matter of Reid* (79 N. Y. S. 2d 248) where such disjunctive was found to be important.

The arguments of counsel show that the language used in the instant will is not a " clear and unambiguous direction against apportionment " so as to take the life insurance out of the provisions of the statute. (*Matter of Manufacturers Trust Co.*, 79 N. Y. S. 2d 393.) Accordingly, the estate taxes must be apportioned with respect to such property.

Submit decree in accordance with this opinion.