JUNE L. WALZER, Plaintiff, and CELIA K. WALZER, as General Guardian of LYNN B. WALZER, Appellant, *v.* DANIEL WALZER, as Executor of and Trustee under the Will of MORRIS WALZER, Deceased, Respondent.

First Department, May 8, 1956.

*Eugene Tuck* of counsel (*Leon M. Labes,* attorney), for appellant.

*Chester Inwald* of counsel (*Milton L. Rosenberg* with him on the brief; *Hartman & Craven,* attorneys), for respondent.

BOTEIN, J. In 1941 Morris Walzer assigned three policies of insurance on his life to the Berks County Trust Company of Reading, Pennsylvania, as collateral security for a loan. The assignments each provided that " any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder ". Some years later, using the change of beneficiary form provided by the insurance company, he designated his two infant daughters as beneficiaries ". [s]ubject to prior assignment, to Berks County Trust Company dated July 21, 1941 ".

When Walzer died in 1951, the loan from the Berks County Trust Company was still unpaid. Pursuant to the assignments, the insurer paid the bank the sum owing out of the proceeds of the policies and turned the balance of the proceeds over to the general guardian of the infant daughters. The general guardian then brought this action on behalf of an infant daughter against the executor of Walzer's estate for repayment of the amount that had been deducted from her share of the insurance proceeds. The executor, contending that the beneficiaries were not entitled to look to the estate for reimbursement, moved for summary judgment, and, the motion having been granted, plaintiff appeals.

Ordinarily, a loan from a bank creates a debt for which the borrower is personally liable, and upon his death, the debt becomes an obligation of his estate (*Matter of Stafford,* 278 App. Div. 612; *Matter of O'Meara,* 193 Misc. 790). If specific property has been pledged as collateral security, the bank can satisfy its claim from the collateral pledged or make claim directly against the estate (*Matter of Jones,* 81 N. Y. S. 2d 386; *Matter of Reinhold,* 68 N. Y. S. 2d 347). If the estate's obligation is discharged by resort to the proceeds of insurance policies held as collateral, the beneficiaries of such policies, by the operation of general equitable principles, are subrogated to the bank's claim against

the estate, and are presumptively entitled to reimbursement for the diminished proceeds (*Friedlander* v. *Scheer,* 1 Misc 2d 899, affd. 281 App. Div. 808; *Matter of Stafford,* 278 App. Div. 612, *supra; Matter of Cummings,* 200 Misc. 467).

The only exception to this general rule is where the decedent has clearly manifested a specific intention to have the debt satisfied solely from the security, freeing his estate from any obligation to repay the loan. Thus, when an insurance company lends money on its policies, paragraph (g) of subsection 1 of section 155 of the Insurance Law specifies that the policy shall be the " sole security " for advances thereon by the insurer, so that the insurance company may not look to the general assets of the estate, and the beneficiary has no right of subrogation (*Wagner* v. *Thieriot,* 203 App. Div. 757, affd. 236 N. Y. 588; *Matter of Hayes,* 252 N. Y. 148). When the loan is from a bank, however, the bank is not so restricted, for it takes the policies as " collateral security ", and, as pointed out in *Chamberlin* v. *First Trust & Deposit Co.* (172 Misc. 472, 475), collateral security means security *additional* to, rather than in lieu of, the personal obligation of the borrower. (Cf. *Barbin* v. *Moore,* 85 N. H. 362.) In the absence of a clear and unequivocal showing to the contrary, the presumption is in favor of the right of subrogation, and only by facts affirmatively indicating the decedent's intention to make the policies the exclusive source of repayment is the presumption overcome (*Matter of Cummings,* 200 Misc. 467, *supra; Matter of Van Hoesen,* 192 Misc. 689, 693).

The executor argues that the designation of the beneficiaries to take the policy proceeds " [s]ubject to prior assignment " overcomes this presumption, and evidences as a matter of law a clear intention to restrict the beneficiaries to the net policy proceeds. He contends, in effect, that the use of this language is so conclusive as to preclude resort to evidence which plaintiff could offer to show that the decedent at the time of the assignment stated that he intended the beneficiaries of the policy to receive the full proceeds, undiminished by the debt owing to the bank. The executor relies primarily on the cases of *Matter of Kelley* (251 App. Div. 847), *Friedlander* v. *Scheer* (*supra*), and *Matter of Kelekian,* 1 Misc 2d 886, affd. without opinion 281 App. Div. 877). The *Scheer* case (1 Misc 2d 899, 901, *supra*) was markedly different from this, since the bank was designated as primary beneficiary and the " ' balance if any ' " was payable to the second beneficiary. In the *Kelley* (*supra*) and *Kelekian* (*supra*) cases, while language similar to that employed here was used, they were decided by reference to the overall plan of the decedent as evidenced by all the arrangements theretofore made.

The use of the quoted phrase has not been deemed conclusive in and of itself on the question of the beneficiaries' rights against the estate (*Matter of Van Hoesen, supra; Matter of Cordier,* 1 Misc 2d 887). No one phrase can be taken as the sole touchstone of intent — that intent must be distilled from a study of the decedent's entire scheme for disposal of his estate as set forth in all the documents, and, if ambiguity persists, in evidence beyond the documents.

The designated beneficiaries, with or without the subordinating language, would take " [s]ubject to prior assignment " to the lending bank. Rights accorded to the bank, however, would not be dispositive of the rights of the beneficiaries as against the estate (*Chamberlin* v. *First Trust & Deposit Co.,* 172 Misc. 472, 475, *supra; Matter of Blackman,* 188 Misc. 390). Clearly, the subordinating language was not deliberately selected by the decedent with a view to settling rights between his beneficiaries and his estate. It was contained in a form provided by the insurance company, and was necessary to implement the requirement in the instrument of assignment that " any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder ". The forms were furnished to clarify the rights and responsibilities of the insurance company and the bank. Those institutions have no interest in whether the beneficiaries are to be permitted to recoup from the estate, and " The beneficiary has no interest in the form provided in the policy for assigning it, that being a provision inserted for the benefit of the company * * * " (*Davis* v. *Modern Ind. Bank,* 279 N. Y. 405, 410–411).

Even if it be argued that the insured adopted the language of the forms, they contain provisions which indicate that the policy proceeds were not to be considered the exclusive source of repayment of the loan. It was specified that the assignment would be security not only for the existing liability of the insured, but for liability thereafter arising, which future liability might exceed the value of the policy. To make it plain that the bank was not restricted solely to the policy, it was explicitly provided that it could take *other* security, and that it could exercise any right given by the instrument of assignment at its option *without affecting the liability of the insured.* A provision that the bank " may " apply the policy proceeds to the liabilities was a further recognition that it had a choice, and that it could proceed directly against the estate if it chose so to do.

The bank having been given the option to seek repayment either from the policy proceeds or the general assets of the estate, the executor could not have complained had the bank

chosen not to exercise its rights against the security (*Chamberlin* v. *First Trust & Deposit Co., supra*). Having done otherwise, the ultimate result should be no different. The rights of the beneficiaries are not to be enlarged or diminished according to the whim or convenience of the assignee. If the bank had a right to proceed directly against the estate, and did not exercise that right, then the beneficiaries should be permitted to be subrogated to that right. There is no clear-cut direction to the contrary — at the very least there is such an ambiguity that extrinsic evidence of intent should be permitted. The order granting the defendant's motion for summary judgment and dismissing the amended and supplemental complaint should be reversed and the motion denied.

BREITEL, J. (dissenting). In this action the designated beneficiaries of three assigned life insurance policies seek reimbursement from the estate of the insured for the amount of the bank loan collected out of the policies. Sometime after the loan had been made, the beneficiaries were designated as such, but expressly subject to the security assignment in favor of the bank.[1] The issue is whether the designated beneficiaries are subrogated to the right of the creditor bank and entitled to be reimbursed for the amount of the loan from the estate.

The question arises on the granting of a motion for summary judgment in favor of the defendant executor, from which one of the plaintiff beneficiaries appeals. The parties stipulated at Special Term that the beneficiaries could obtain and submit affidavits that, from time to time, the deceased insured had stated " that it was his intention that the primary obligation to repay the loan    *    *    *    should be borne by his estate and that the funds of his estate should be the primary source from which the said debt should be paid and that the beneficiaries    *    *    * should receive the full amount    *    *    *    undiminished by the amount of the said debt ".

Concededly, parol evidence would be admissible if the documents manifesting the insured's intention were ambiguous. There is neither such ambiguity, nor competent parol evidence proffered, however, and the motion was properly granted and the order should be affirmed.

Cases have arisen in which life insurance policies assigned as collateral security for a debt have posed the question whether the beneficiary, upon payment of the debt out of the proceeds of the

---

1. The policies had an aggregate face value of $35,000, and had been issued in 1925 and 1938. The bank loan was for $20,100, and it was made in 1941. The change in beneficiaries was effected in 1949. Insured died in 1951.

policy, could obtain reimbursement from the estate. The rule has crystallized into rather simple form. It is that, if the assignee creditor is named as the primary beneficiary and another is named as the secondary beneficiary, or the latter is named subject to the assignment in favor of the creditor, the secondary or designated beneficiary not only takes subject to the assignment, but there is no right of reimbursement from the estate. Twice, very recently, this court affirmed that rule (*Friedlander* v. *Scheer,* 281 App. Div. 808, affg. 1 Misc 2d 899; *Matter of Kelekian,* 281 App. Div. 877). In so holding neither the courts below nor this court made any precious distinctions among the forms of words used in designating the beneficiary. Nor did the authorities upon which these decisions were based (*Wagner* v. *Thieriot,* 203 App. Div. 757, affd. 236 N. Y. 588; *Chamberlin* v. *First Trust & Deposit Co.,* 172 Misc. 472; *Matter of Van Hoesen,* 192 Misc. 689; *Matter of Cummings,* 200 Misc. 467; *Matter of Kelley,* 160 Misc. 421, affd. 251 App. Div. 847, motion for leave to appeal denied 276 N. Y. 689). The effective act is the designation of the creditor as a primary beneficiary, or the making of a new designation of beneficiary subject to the assignment. Where there is no such designation or change, a different intention is manifested. (See discussion in *Friedlander* v. *Scheer,* 1 Misc 2d 899, *supra.*)

True it is, that the basis for the rule is the manifested intention of the decedent insured, as stated in the cases. But, it is the intention manifested in documents effecting either the assignment of the policy or the designation of the beneficiaries under the policy, and not in parol evidence, wholly oral in content and origin, with respect to transaction that allegedly occurred in the lifetime of the deceased. For, involved is a contract, and, when there are integrated writings, the question of manifested intention is always resolved by what the parties wrote. (*Raleigh Associates* v. *Henry,* 302 N. Y. 467, 473; *Mencher* v. *Weiss,* 306 N. Y. 1, 7.) Thus, in the *Mencher* case (*supra,* pp. 7–8), the Court of Appeals quoted with approval from Judge LEARNED HAND: " ' A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.' "

It is immaterial whether the documents signed by the insured were prepared by the bank from which he borrowed, or the insurance company, or whether he drafted the documents himself. The test is what did the documents provide. It is clear that if a policy of life insurance is assigned as collateral for a debt *without changing the beneficiary,* then the primary obligation for the debt is that of the estate of the insured, and, in the event the creditor collects out of the policy, subrogation results and a right to collect from the estate descends to the beneficiary. (*Matter of Stafford,* 278 App. Div. 612; *Matter of Cummings,* 200 Misc. 467, *supra*; *Matter of Van Hoesen,* 192 Misc. 689, *supra*; *Matter of Kelley,* 160 Misc. 421, affd. 251 App. Div. 847, motion for leave to appeal denied 276 N. Y. 689, *supra*; *Chamberlin* v. *First Trust & Deposit Co.,* 172 Misc. 472, *supra.*) But where, at the time of the assignment, or later, a change is made in the beneficiaries and the creditor is made the primary beneficiary or the designation of the beneficiary is made subject to the assignment, then the courts have uniformly held that the secondary or designated beneficiary is vested only with the equity in the policy. (*Friedlander* v. *Scheer,* 1 Misc 2d 899, *supra*; *Matter of Kelekian,* 281 App. Div. 877, *supra*; *Chamberlin* v. *First Trust & Deposit Co., supra*; *Matter of Kelley, supra.*)[2]

There is no resulting ambiguity in the language used, for to take subject to the primary beneficiary or the assignment is to take the policy subject to payment of the debt which is a charge on the policy, not only as between the creditor and the beneficiary, but as between the beneficiary and the estate. Whether words like the " balance if any " are used, as was the situation in the *Friedlander* case (1 Misc 2d 899, 901, *supra*), makes no difference. Nor does it make a difference that, as in *Matter of Kelley* (*supra*), the designation of the beneficiary was made subject to the assignment, rather than to provide, in so many words, primary and secondary beneficiaries. In either event, the secondary or designated beneficiary takes what remains of the equity — it may be all of the face value, if the insured pays off the debt in his lifetime, or it may be what remains, if he does not. Again, the construction is quite different when the policy is assigned as collateral security, but there is no simultaneous or subsequent change of beneficiary.

Language in the *Chamberlin* case (*supra*) is so apt to the circumstances here that it merits quotation. In that case it was

2. In accord: *Taylor* v. *Southern Bank & Trust Co.,* 227 Ala. 565; *Allen* v. *Home Nat. Bank,* 120 Conn. 306; *Katz* v. *Ohio Nat. Bank,* 127 Ohio St. 531; *Farracy* v. *Perry,* 12 S. W. 2d 651 (Tex.). See esp. *Killingsworth* v. *Rembert Nat. Bank,* 19 S. W. 2d 802, affd. 32 S. W. 2d 645 (Tex.).

held that the estate was primarily liable, but the court pointed out how a beneficiary named in the policy might be reduced to only a secondary interest. This is what the court said: " If, then, the insured pledged these policies for security additional to the primary obligation which was his promise to pay, and if it be held that the collateral could not be used unless and until there was a default in performing the primary obligation, it follows that the primary fund from which the note should be paid was his estate, in the absence of a clear and unequivocal direction to the contrary. I do not think that the mere assignment of the policies in this case constituted a direction to the insurance company to pay the note to the lender trust company. Chamberlin could very easily have accomplished that had he so desired. He could have made the lender trust company the beneficiary of the policies. He could have indicated in some way that the insurance money should be the primary fund from which the note was to be paid. He could have revoked the designation of his wife as beneficiary and redesignated her the beneficiary of the policies subject to the assignments, thereby diminishing her interest in the policies *pro tanto,* in which case, as was held in *Matter of Kelley* (251 App. Div. 847), the lender trust company would have been constituted the primary beneficiary and the wife the secondary beneficiary." (172 Misc. 472, 475–476.) The alternatives suggested were exactly what were utilized in this case.

This is no strained or unnatural construction. When one makes a gift of any asset — stock, bond or physical property — and states that it is subject to a specified charge or lien, the common understanding is that the donee takes with the obligation of discharging the burden. And life insurance is not peculiarly different, especially in these days of planned liquidation of debts out of life insurance proceeds. Nor does borrowing from a bank rather than the insurance company change the effect in the light of the lower interest rates charged by banks as compared with the loan interest rates specified in policies.[3]

Moreover, the rule is not extraordinary and is in accord with the pattern which prevails in the devolution of assets in an estate. Under the old common-law rule a legatee who took an asset burdened with a debt was entitled to receive his legacy free

3. It is not without significance, although it is immaterial to the question of law, that the insured in this case did not reduce the amount of the loan from the bank for the ten years that elapsed from the time he made the loan in 1941 until he died in 1951. Moreover, the insured changed the beneficiary designation and made it subject to the assignment in 1949, eight years after the making of the loan and just two years before he died.

of the debt, and could look to the estate for reimbursement. The common-law rule never had a firm position in this State and its application remained for many years in doubt, and very much criticized (16 St. John's L. Rev. 160; 40 Harv. L. Rev. 630; Atkinson on Wills [2d ed.], p. 706 *et seq.*). But the law has now been made very specific in this State by statute. Section 20 of the Decedent Estate Law provides as follows: " Where personal property *subject to any lien, mortgage or pledge* is specifically bequeathed by will, the legatee must satisfy the lien, mortgage or pledge out of his own property without resorting to the executors of his testator unless there be in the will of such testator a direction, expressly or by necessary implication, that such mortgage, lien or pledge be otherwise paid. Where such personal property specifically bequeathed *has been made subject to any lien, mortgage or pledge* with other personal property, the specifically bequeathed property shall bear its proportionate share of the total lien, mortgage or pledge." (Emphasis supplied.) This statute was enacted to conform the personal property rule to section 250 of the Real Property Law.

The policy expressed by the statutes and cases recognizes, realistically, that a testator or an insured may have a primary interest in his residuary legatees rather than in a specific legatee or a designated or secondary beneficiary in a life insurance policy. The application of that policy, the cases show, is not far fetched. In the *Friedlander* case (1 Misc 2d 899, affd. 281 App. Div. 808, *supra*), it was the insured's incompetent wife and his mother, rather than his allegedly affianced friend who benefited from the construction. In the *Kelekian* case (281 App. Div. 877, *supra*), trustees for the benefit of two children were entitled to the residue of the estate, while the designated secondary beneficiary was one of those children, but an incompetent, confined to an institution.

In this case the record does not reveal who is entitled to the residue of the estate, but it is significant that the general guardian who sues on behalf of the infant beneficiary was originally the primary beneficiary of the policy, and was displaced by the designation of the children. Thus, the subordination of a beneficiary does not reflect necessarily, or even in likelihood, a primary interest in the creditor, but perhaps in the insured's legatees. In any event, it is undesirable to speculate beyond the documentation provided by the insured and open the door to parol evidence of alleged conversations with a dead man. Incidentally, on this motion the beneficiaries proffer only such parol evidence, and speak not of dispositive plans or other

circumstances disclosing intention. Not that that should make any difference in result.

A contrary view not only unsettles the rule with respect to life insurance policies, but it does violence to the parol evidence rule. For, even where there is ambiguity in written contracts, it is not resolved by oral expressions of intention expressed unilaterally. (*United States Print. & Lithograph Co.* v. *Powers*, 233 N. Y. 143, 158–159; 9 Wigmore on Evidence [3d ed.], §§ 2466, 2472, esp. at p. 238.) And the effect here is graver, for the door is opened to parol evidence of a dead man's orally expressed intention. (See *Hall* v. *Mutual Life Ins. Co. of N. Y.*, 282 App. Div. 203, 210, affd. 306 N. Y. 909.) Moreover, we are not dealing here with an ambulatory will which speaks as of the time of the death, but a contractual instrument that speaks of its own date.

What undoubtedly has engendered confusion with respect to policies of life insurance assigned as collateral security for debts is the provision of the Insurance Law (§ 155, subsection 1, par. [g]) requiring that the company look to the assignment or pledge of the policy as the sole security for the debt (see *Wagner* v. *Thieriot*, 203 App. Div. 757, 761, *supra*). The statute suggested, therefore, a special treatment of policies assigned to the insurer to secure a loan from it. But this distinction in the insurer-insured situation does not stem from the form of assignment or designation of beneficiaries. In either event when an assignee creditor, whether the insurer or not, is designated as the primary beneficiary, or the named beneficiary is described as taking subject to the rights of the assignee, all that the secondary or named beneficiary receives is the equity in the policy. It is the fact of this designation of the creditor as a primary beneficiary, or of the beneficiary taking subject to the assignment, which the courts have held manifests an unambiguous intention to have the debt paid out of the policy and to cut off the beneficiary's right of subrogation. (*Friedlander* v. *Scheer*, *supra*; *Matter of Kelley*, 160 Misc. 421, *supra*.) It is a gratuitous inversion of the "presumption" that follows from such designation to hold that there must be more to show an intention to so limit the beneficiary's rights. Indeed, there is involved no " presumption " but an intention completely manifest in writing.

Of course, the creditor may look either to the estate or to the assigned policy for payment; but this does not give the right to the creditor to enlarge or decrease the interest of the beneficiary. Concomitant with the enactment of statutes like

section 250 of the Real Property Law and section 20 of the Decedent Estate Law, it has been held that the devisee or legatee of property takes subject to the liens or other charges on the property, and those charges and liens would not be escaped because the estate has, in the first instance, made payment of the amounts due under the lien or charge. (*Matter of Beaudry,* 206 Misc. 749; cf. *Matter of Black,* 293 N. Y. 85; *Matter of Burrows,* 283 N. Y. 540, and *Mutual Life Ins. Co.* v. *Weil,* 278 App. Div. 238, affd. 304 N. Y. 569; see, also, 46 C. J. S., Insurance, § 1169, pp. 51–52.) The same rule perforce applies to a beneficiary who receives a life insurance policy subject to the debt charged on it. Thus, the fact that the estate might have paid off the debt on the policy would not change the incidence of obligation.

Accordingly, I dissent and vote to affirm the order granting defendant summary judgment.

PECK, P. J., RABIN and COX, JJ., concur with BOTEIN, J.; BREITEL, J., dissents and votes to affirm in opinion.

Order reversed, with $20 costs and disbursements to the appellant, and the motion denied.