OPINION OF THE COURT
Edward J. Greenfield, J.
In this declaratory judgment action seeking a ruling as to the scope of coverage under an insurance contract, defendant, underwriters at Lloyd’s (hereafter Lloyds), move for summary judgment dismissing the complaint. Plaintiff cross-moves for summary judgment in its favor.
Plaintiff bank procured a broad form safe depository certifi *748 cate of insurance from the defendant underwriters at Lloyds,' covering it for liability arising out of the loss of customers’ property. Lloyds was obligated to investigate all claims and defend any lawsuit against the bank based on alleged loss of customers’ property.
Involved in this controversy were diamonds belonging to a dealer named Dov Fastag, a customer of the bank, who delivered certain diamonds to it to be held as collateral against an indebtedness of $88,500. The diamonds were placed in a bank safe-deposit box and red flagged to indicate the bank had an interest in the contents, with joint access required by Fastag and a bank officer. Some months later, when Fastag sought to redeem the diamonds, the box was opened, and it was discovered the diamonds were gone.
The bank sued Fastag for the balance of the indebtedness, and he counterclaimed for the value of the diamonds. The bank demanded that Lloyds provide a defense on the counterclaims. Lloyds disclaimed, and the bank brought this suit for a declaratory judgment asking the court to declare that Lloyds is obliged to defend on the counterclaim and indemnify against any liability thereunder.
The pertinent language of the certificate of insurance provides that the underwriters, under coverage A, are: "To pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay by reason of liability for loss of customers’ property”; and under coverage B: "To pay for loss of customers’ property by burglary or robbery or attempt thereat or for damage to or destruction of customers’ property”. Underwriters are to: "investigate all claims against the Assured for such loss and defend any suit against the Assured alleging loss and seeking damages which are payable under the terms of this certificate, even if any of the allegations of the suit are groundless, false or fraudulent”. Exclusions, the applicability of which are the focus of the controversy herein, provide:
"This certificate does not apply:
"a) To property held by the Assured in trust for more than thirty (30) days or as collateral”.
Lloyds contends that the diamonds kept in the safe-deposit box clearly were being held as collateral, and hence excluded from coverage. The bank insists that it is just as clear that the diamonds were not collateral since they were not held pursuant to a security agreement.
*749 In interpreting an insurance contract, interpretation of its terms and the construing of its terminology is manifestly a matter of law for determination by the court.
The word "collateral” has a plain and generally understood meaning. It is > defined as "property subject to a security interest”. (UCC 9-105 [1] [c].) There is no need to take depositions, examine the underwriters’ files, or hear trial testimony regarding the meaning of the term. If, as Learned Hand once put it, "it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.” (Hotchkiss v National City Bank, 200 F 287, 293, affd 201 F 664, affd 231 US 50.)
The bank contends there can be no security interest absent an agreement, and that it can exist only where there is "actual and exclusive possession”. (Clarkson Co. v Shaheen, 533 F Supp 905, 918.) Here, they contend, the Fastag note was unsecured, and the bank’s possession was not exclusive, but joint.
Collateral security means security additional to, rather than in lieu of the personal obligation of the borrower. (Walzer v Walzer, 1 AD2d 482, 484.) It secures the creditor, and gives him assurance that if the debt is not paid in full, he may have resort to the collateral to obtain payment. (People v Remington & Sons, 121 NY 328.) It is the general term for the tangible and intangible property subject to a security interest. (53 NY Jur, Secured Transactions, § 2, at 211, n 3.)
There is no need to have the collateral explicitly referred to in the agreement creating the debt. Here the collateral was appropriately supplied to secure an antecedent debt. (Wickert v Folk, 250 Wis 194, 26 NW2d 540; C & M Developers v Berbiglia, Inc., 585 SW2d 176 [Mo].) Nor does the property lose its character as collateral if the possession of the secured party is not exclusive. The Clarkson case (supra), relied on by the bank, stands merely for the proposition that there is no enforceable security interest in corporate securities pledged to secure corporate debts under section 9-304 (1) of the Uniform Commercial Code when the pledgor has not actually surrendered his dominion and control over the collateral. The diamonds pledged here were not intangibles governed by the UCC, and it is clear that they were produced by the debtor, who gave up his unfettered dominion and control. The parties, *750 by placing the diamonds in a safe-deposit box on bank premises, but not in the "customer’s safe deposit boxes” for which the debtor was not charged, and providing that there has to be joint access, and its red-flagging deprived the debtor of the right to deal with the property as he pleased, and assured the bank that the diamonds would remain on its premises to be resorted to if the debtor defaulted on his personal obligation. It was then, in every sense of the word, collateral, and as such was expressly excluded from coverage. The coverage afforded by the insurance was for customers’ property in bank custody, but once the customer yielded his unfettered dominion and control and it became collateral in which the bank had a security interest, insurance coverage of a different sort was required.
The motion of defendant for summary judgment is therefore granted and that of the plaintiff denied. It is declared and adjudged that the defendant, under the policy in question, has no obligation to indemnify plaintiff on the Fastag claim, nor to provide for the defense against such claims.