ANNA C. FISHER, as Executrix, etc., of SARAH A. CONNOR, Deceased, Appellant, v. TITLE GUARANTEE AND TRUST COMPANY, Respondent.*

First Department, June 18, 1941.

*Paul A. Crouch* of counsel [*Clark, Carr & Ellis*, attorneys], for the appellant.

*William J. Junkerman* of counsel [*Milbank, Tweed & Hope*, attorneys], for the respondent.

* Revg. 176 Misc. 166.

CALLAHAN, J.  Plaintiff's testatrix was the owner of two guaranteed mortgage certificates for $6,000 each, issued by defendant. These certificates represent an entire mortgage on a house and lot in the Bronx.

The certificates were guaranteed by the Bond and Mortgage Guarantee Company (hereinafter referred to as " Guarantee Company "). They state that the bond and mortgage, together with the policy of Guarantee Company guaranteeing to the holders of certificates payment of principal and interest, are held by the defendant as depositary and agent for the holders of such certificates. They recite that the defendant is to hold the bond and mortgage, and the policy of guaranty, and other instruments and evidences of title relating thereto, for the benefit of the purchaser and any other persons interested therein.

The defendant agreed, on receipt of the interest and principal of the bond and mortgage, to distribute same to the persons entitled thereto.  The certificates also recite that the defendant is to have the full power to take any action it may deem necessary or desirable, in order to enforce any of the provisions of said bond and mortgage and to protect the mortgage security.

The contract of guaranty referred to in the certificates had been issued to defendant by the Guarantee Company four years prior to the issuance of the certificates.  The policy of guaranty contained provisions granting to Guarantee Company the exclusive agency to control the collection of the principal and interest due under the bond and mortgage.

The mortgagor defaulted in taxes in the second half of the year 1931.  This was followed by further defaults in interest and taxes in 1932 and 1933.  Interest on the mortgage was paid by Guarantee Company up to and including October 1, 1932.  There was a provision in the mortgage that the principal would become due upon any default in interest for thirty days.  In consequence of this provision the mortgage might have been placed in default. If that had been done, Guarantee Company's liability on the underlying guaranty would have matured on June 1, 1932, and on that date plaintiff and defendant would both have been entitled to demand payment from Guarantee Company.  Defendant, however, waited until October 25, 1932, when it executed an assignment of the mortgage to Municipal Mortgage Company (hereinafter called " Municipal "), a wholly owned subsidiary of defendant, for the purpose of bringing an action in foreclosure.  On the same day Municipal verified a complaint in foreclosure.  The officers of Municipal who verified the complaint were also officers of defendant.

In bringing the action for foreclosure, the complaint prepared by Municipal stated that plaintiff proceeded solely on the basis of a default in unpaid interest. It also expressly stated that the plaintiff in the action did not elect to deem the principal due. The effect of this election was to extend the time of the payment of the principal during the pendency of the action.

At the time the foreclosure action was commenced, Guarantee Company was solvent and was paying its guaranties in accordance with its contracts. During the pendency of the foreclosure proceeding Guarantee Company was placed in rehabilitation and ceased payment of its obligations.

Defendant states that it assigned the mortgage to Municipal because of the provisions contained in the contract of guaranty authorizing Guarantee Company to conduct foreclosure proceeding. Its position is that the Guarantee Company and not the defendant was in control of the foreclosure proceedings. However, Municipal was plainly the *alter ego* of defendant, and defendant was liable for any wrongful act by Municipal.

Plaintiff's cause of action is based on the claim that the assignment of the mortgage to Municipal by defendant, coupled with the making of the election contained in the complaint which extended the time of payment of the principal, were acts of conversion and constituted a violation of defendant's duty under the certificates as agent for plaintiff.

Plaintiff contends that the certificates created an agency which placed on defendant the obligation to collect the mortgage debt for the plaintiff, either from the mortgagor or from the Guarantee Company.

Defendant's position is that under its contract as evidenced by the certificates it did not incur any affirmative obligation to collect the mortgage principal, but merely to retain the custody of moneys coming into its possession, and to pay the sums so received to plaintiff.

This dispute is discussed at length in the briefs. We do not think it is necessary for us to find that defendant was required to take affirmative steps to collect the principal in order to make it liable to plaintiff. We deem that it became liable, at least for breach of its fiduciary obligations, when it took steps that were plainly in the interest of the Guarantee Company and an interference with the rights of the certificate holder. The certificates created a contract of agency, with resulting fiduciary obligations. It is plain that the obligations which defendant assumed towards certificate holders were such that it was precluded from taking any step which might interfere with the opportunity and right of

certificate holders to collect the mortgage debt, as well as the sums guaranteed.

The assignment of the mortgage to Municipal as an initial step in a proposed foreclosure proceeding, in and of itself, would not have been in hostility to plaintiff's rights, if such step was taken to protect the interests of the plaintiff. However, to the extent that the defendant, through its wholly owned subsidiary, elected to extend the mortgagor's time to pay, such postponement of liability on the part of the mortgagor operated to lessen plaintiff's rights under the certificates. It is not claimed that mortgage money was so free that the extension of the loan could have been justified in order to maintain an investment. There appears to be no reason for waiving collection, except to aid the Guarantee Company, for the effect of the election was not only to extend the time of the mortgagor to pay the principal of the mortgage, but to postpone plaintiff's recourse against Guarantee Company.

We find that the decision in *Strebler* v. *Title Guarantee & Trust Co.* (277 N. Y. 730) requires us to hold that the action taken here by defendant created a liability on its part for conversion, or at least for breach of contract.

The court at Special Term, in dismissing the complaint herein, rested its decision on the *Strebler* case (*supra*). Both sides on this appeal cite that decision as authority for their respective contentions. The difference of opinion with respect to what the *Strebler* case holds is due to the fact that the Court of Appeals in part affirmed and in part reversed a judgment for plaintiff therein. No opinion was written by the Court of Appeals deciding the *Strebler* case. The parties to this appeal disagree as to the ground on which the distinction as to liability rested as between the two causes of action. They differ largely as to whether the case holds that the defendant, as agent for a certificate holder, was under a duty to take affirmative steps to collect the mortgage debt.

In the *Strebler* case (*supra*), as we have mentioned, two causes of action were set forth in the complaint. The first cause of action was an attempt by plaintiff to enforce liability for conversion and for breach of contract under a guaranteed mortgage certificate for $8,000, issued by the present defendant and identical in form with the present certificates. In that case the defendant, after a default had occurred, had extended the time of payment of the mortgage debt by agreement with the mortgagor without the consent of the certificate holder. During the extension of time thus granted the Guarantee Company became insolvent. Plaintiff Strebler contended that the extension was beyond the power of the defendant,

and that, in consequence thereof, plaintiff had been damaged to the extent that the value of his certificate had become impaired during the period of extension. The justice at Trial Term who tried the *Strebler* case and who wrote the only opinion rendered in the case, held that the provisions of the certificate indicated that the power to collect was impliedly vested in defendant. He further held that the reference to the policy of the Bond and Mortgage Guarantee Company contained in the certificates did not give notice to certificate holders that the same contained any provisions inconsistent with those in the certificate, and, hence, any change of the rights of certificate holders, as defined in the certificates, would not be binding. He stated that, as an agent and fiduciary, defendant could not relieve itself from its contractual obligations by delegating performance thereof to another agent; that upon default, and in the event of failure to collect the mortgage debt, the defendant should have proceeded to collect on the guaranty. The court said that in any event the agent, under its contract, was given no authority by its principal to extend the mortgage debt. Because of its conduct in granting the extension, and for failing to demand payment from the guarantor, the court awarded judgment to plaintiff for the difference between the face amount of the certificate and the present worth thereof.

The second cause of action set forth in the complaint in the *Strebler* case (*supra*) was based on a claim arising out of and based on an entirely separate and distinct certificate for $12,000. This cause of action was in the nature of a suit for money had and received. Plaintiff sued to recover defendant's interest earnings on the $12,000 represented by his certificate, which he claimed the defendant, as agent, had retained without right. The interest amounted to $248. This sum has been paid by defendant to the Bond and Mortgage Company under the following circumstances: At maturity of the mortgage securing the $12,000 certificate, the owner of the property has not paid the principal sum due. The Bond and Mortgage Guarantee Company thereupon paid the same and took an assignment from defendant to itself of an interest in the bond and mortgage. When defendant assigned to Guaranty Company, instead of collecting plaintiff's $12,000, it permitted that company to place same to its own credit as depositor in defendant's bank. This money remained on deposit with defendant for four years, from 1930 to 1934. It appeared, however, that the cause of the delay in payment to Strebler was due to the fact that there was litigation over Strebler's title to the $12,000 certificate. A judgment in favor of Strebler for $248 on the second cause of action was affirmed by this court (250 App. Div. 846). The Court

of Appeals, however, reversed that portion of the judgment and affirmed only the portion thereof based on the first cause of action. It dismissed the complaint with respect to the second cause of action.

The trial court in the present case held that the dismissal of the second cause of action by the Court of Appeals indicated that the court intended to hold that there was no contractual obligation on the part of Title Company to collect either the mortgage debt or the guaranty. The trial court stated further that defendant in the *Strebler* case had admitted liability on the first cause of action in the brief it submitted to the Court of Appeals. We find from an examination of that brief that the defendant-appellant therein disputed liability on the first cause of action, both because it denied any agency to collect, and because it claimed an erroneous measure of ·damages had been applied. What was said *arguendo* as to liability under the first cause of action as a preface to discussing damages, was not, it seems to us, intended to be an admission of liability. In any event, we think that the decision of the Court of Appeals in the *Strebler* case (*supra*) indicates a holding that the contractual obligations incurred under the certificates issued by the defendant, which were identical with those involved in the present case, created a duty on the part of the defendant to refrain from taking any action which interfered with the right of the certificate holder to collect the principal sum due from the mortgagor and from the guarantor.

In the *Strebler* case, as in the present case, there had been interference with certificate holders' rights when the defendant took steps which extended the time of payment. The only difference between the two cases is that in the *Strebler* case the extension was granted by the execution of a formal extension agreement, whereas here the extension was the result of action taken by defendant's wholly owned subsidiary by force of statements contained in the pleading which it verified.

The reversal and dismissal of the second cause of action in the *Strebler* case (*supra*) by the Court of Appeals may well have indicated a holding that under the circumstances disclosed therein the defendant should not have been held liable for a second payment of interest in view of the fact that the delay in payment was to some extent due to litigation over Strebler's title.

We do not think that the essential question in either the *Strebler* case or the present case is whether an affirmative duty to collect exists. It is enough that an agent and fiduciary unlawfully interferes with its principal's opportunity to collect, to the principal's damage.

The assignment of the mortgage by defendant to Municipal divorced from the simultaneous verification of the complaint in foreclosure, would have been no more than a technical conversion, if it had been followed by steps honestly taken to protect the plaintiff's rights. But being accompanied by a hostile act, it clearly created liability.

Not only an unauthorized taking of personal property, but, in cases where limited authority has been given, any meddling with such property beyond the extent of the authority conferred, so as to alter or interfere with the owner's dominion, is a conversion. (*Laverty* v. *Snethen*, 68 N. Y. 522; *Kittredge* v. *Grannis*, 244 id. 168.) But quite aside from the question of conversion, we find that a breach of plaintiff's contract rights has been established by the undisputed facts in the case.

It appearing that the present value of the plaintiff's certificates is but sixty dollars, judgment should be awarded to plaintiff for $11,940, with interest from October 25, 1932.

The judgment should be reversed, with costs to appellant, and judgment directed for the plaintiff for $11,940, with interest and costs.

MARTIN, P. J., TOWNLEY and GLENNON, JJ., concur; DORE, J., taking no part.

Judgment unanimously reversed, with costs, and judgment directed in favor of plaintiff for $11,940, with interest and costs.