**Doris FILNER, Plaintiff-Appellant,**

v.

**Samuel SHAPIRO and Southwestern Alloys Corporation, Defendants-Appellees.***

**No. 25, Docket 79–7815.**

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1980.

Decided Dec. 29, 1980.

* *Editor's Note: The opinion of the United States Court of Appeals, Ninth Circuit in* H & D, Inc. v. National Labor Relations Board, *published* in the advance sheets at this citation (633 F.2d 139), was withdrawn from bound volume at the request of the Court.

Jerry L. Siegal, New York City (Coudert Brothers, Mark D. Lebow and Lynn M. Barry, New York City, on brief), for plaintiff-appellant.

William A. Austin, New York City (Hertzog, Calamari & Gleason, Peter E. Calamari, New York City, on brief), for defendants-appellees.

Before TIMBERS, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

On February 13, 1975, appellant Doris Filner entered into a letter agreement with Samuel Shapiro, president of Southwestern Alloys Corporation (Southwestern). The letter, dated February 9, 1975, was prepared on Shapiro's stationery and read as follows:

Dear Doris,

In accordance with our understanding, upon your wiring me funds in the amount of $200,000.00, I will act as your agent to purchase in your name a time certificate of deposit from the Southern Arizona Bank and Trust Company. This TCD

shall thereafter be pledged to collateralize either a loan or letter of credit from the Southern Arizona Bank to Southwestern Alloys Corporation.

If the above is in keeping with your understanding, would you please signify by signing in the appropriate place below and transferring the $200,000.00 to my account number 328–4678 at the West Van Buren Branch of the Valley National Bank of Arizona in Phoenix.

Sincerely,

/s/ S. Shapiro

By February 13, appellant had transferred $200,000 to Shapiro's account.

On February 14, a Southwestern employee, under Shapiro's direction, used appellant's money to purchase a ninety-day time certificate of deposit from the Southern Arizona Bank and Trust Company (the Bank). However, on Shapiro's instructions the certificate was issued in Southwestern's name instead of Doris Filner's.

Southwestern borrowed $1,000,000 from the Bank and gave in return four promissory notes, three for $200,000 and one for $400,000. It pledged the certificate of deposit as collateral for note number 1196 which was for $200,000. Two of the other notes were secured by Southwestern's own money. The fourth was unsecured but guaranteed by Southwestern's chief operating officer, Ben Klimist.

On February 18, 1975, Southwestern loaned $1,000,000 to HRP Hotel Company (HRP), a limited partnership formed for the purpose of constructing a Hyatt Regency Hotel in Phoenix, Arizona. On May 13, 1975, when Southwestern's notes from the Bank became due, HRP was unable to repay its loan from Southwestern. Southwestern renewed its Bank notes until August 13, 1975, but found HRP in equally straitened circumstances on that day. Without waiting for the Bank to declare its notes in default, Southwestern paid them, using the proceeds of the certificate of deposit, which also had been renewed for ninety days, to pay note 1196. HRP never repaid Southwestern.[1]

Appellant demanded the return of her money. When it was not forthcoming, she commenced this action, alleging conversion, breach of contract, unjust enrichment, and fraud. After a two-day trial, the district court, sitting without a jury, held that appellant had failed to prove that the loss of her money had resulted from appellees' wrongful use of it and that therefore appellant could not recover in either tort or contract. The court also held that appellees had substantially performed their contractual obligations. Finally, the district court held that appellant had abandoned the causes of action for fraud and unjust enrichment. It dismissed the complaint. We reverse.

Under the law of New York, which all parties cite as controlling, an agent who intermeddles with the property of his principal beyond the extent of his authority, with the intent to use or dispose of it so as to alter its condition or interfere with the owner's dominion, is guilty of conversion. *Kittredge v. Grannis*, 244 N.Y. 168, 176, 155 N.E. 88 (1926); *Laverty v. Snethen*, 68 N.Y. 522, 524 (1877); *Fisher v. Title Guarantee and Trust Co.*, 262 App.Div. 293, 299, 28 N.Y.S.2d 410 (1941), *aff'd*, 287 N.Y. 275, 39 N.E.2d 237 (1942). Wrongful intent is unnecessary. All that the owner need show is that he has been deprived of his property by the defendant's unauthorized exercise of dominion and control over it. *Brown v.*

---

1. Appellant knew that the money borrowed by Southwestern was going to be used for the hotel project, because her husband was a partner in HRP and was instrumental in securing the use of her $200,000. However, the record does not support the district court's conclusion that appellees had the right to use appellant's certificate of deposit to pay Southwestern's note to the Bank if HRP defaulted in its obligation to Southwestern. Appellant agreed to put up collateral for the Southwestern loan and thereby took the risk that Southwestern might not be able to repay the Bank. Appellant did not take the risk that HRP would not repay its debt to Southwestern. Under the guise of interpreting a contract, a court should not rewrite it. *Morlee Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d 16, 19 20, 210 N.Y.S.2d 516, 172 N.E.2d 280 (1961).

*Garey*, 267 N.Y. 167, 170, 196 N.E. 12 (1935); *Suzuki v. Small*, 214 App.Div. 541, 556–58, 212 N.Y.S. 589 (1925), *aff'd*, 243 N.Y. 590, 154 N.E. 618 (1926).

The district judge concluded that the loss of appellant's money was caused by HRP's collapse rather than by appellees' conduct, and he therefore deemed it unnecessary to decide whether appellees had exercised such unauthorized dominion over appellant's property as to be guilty of conversion. This reasoning, we believe, puts the cart before the horse. The logical process would have been to decide first whether there had been a conversion and then whether damage had resulted. Analyzing the record in this manner, we are led inexorably to the conclusion that appellees converted appellant's property and caused the loss for which she sued.

The language of the parties' written contract is crystal clear. It provided:

(1) Shapiro, acting as appellant's agent, would purchase a $200,000 certificate of deposit in appellant's name.

(2) The certificate of deposit would be pledged to collateralize a loan from Southern Arizona Bank to Southwestern.

Had Shapiro performed this contract as agreed, appellant would have become a surety for payment of Southwestern's note number 1196 to the extent of her collateral, with all the legal and equitable rights inherent in such status. *Rutherford National Bank v. Manniello*, 240 App.Div. 506, 508, 271 N.Y.S. 69 (1934), *aff'd*, 266 N.Y. 568, 195 N.E. 203 (1935). Foremost among these would have been the right to expect that Southwestern would perform the duty which it owed to both appellant and the Bank, *i. e.*, the duty of paying note 1196. *Epstein v. Goldstein*, 118 F.2d 73, 74 (2d Cir. 1941); *Chamberlin v. First Trust and Deposit Co.*, 172 Misc. 472, 475, 15 N.Y.S.2d 168 (1939); *Restatement of Security* §§ 103, 112, Comment a (1941).

■ The existence of the principal's duty to pay gives a surety the equitable right to call upon the principal to exonerate him from liability by discharging the debt when it becomes due. *Chicago Title & Trust Co. v. Fox Theatres Corp.*, 91 F.2d 907, 910 (2d Cir. 1937); *Admiral Oriental Line v. United States*, 86 F.2d 201, 204 (2d Cir. 1936); *Continental Casualty Co. v. Milford Construction Corp.*, 15 Misc.2d 953, 185 N.Y.S.2d 707 (1958); *Restatement of Security* § 112; 57 N.Y.Jur. *Suretyship and Guaranty* § 307 (1967). Alternatively, the existence of this duty gives the surety, who is required to pay, the right to be subrogated to the creditor's claims against the principal. *Gerseta Corp. v. Equitable Trust Co.*, 241 N.Y. 418, 425–26, 150 N.E. 501 (1926); *National Surety Co. v. National City Bank*, 184 App.Div. 771, 773–74, 172 N.Y.S. 413 (1918); *Restatement of Security* § 104.

■ The relationship between Samuel Shapiro and Doris Filner was not that of debtor and creditor. Shapiro was in possession of money that belonged to appellant Filner and was charged with the fiduciary and contractual duty of purchasing a certificate of deposit in her name. Instead, he purchased a certificate in Southwestern's name. This unauthorized exercise of dominion over appellant's funds was a conversion of property that did not belong to him. *Britton v. Ferrin*, 171 N.Y. 235, 242–43, 63 N.E. 954 (1902); *Moffatt v. Fulton*, 132 N.Y. 507, 515–16, 30 N.E. 992 (1892); *AMF Inc. v. Algo Distributors, Ltd.*, 48 App. Div.2d 352, 355–58, 369 N.Y.S.2d 460 (1975); *Matter of Riley*, 266 App.Div. 160, 163, 43 N.Y.S.2d 753 (1943); *Kilmer v. Hutton*, 131 App.Div. 625, 636, 116 N.Y.S. 127 (1909).

Arguably, the purchase in the wrong name was only a technical conversion that gave appellant no right of action, because, standing alone, it caused her no real detriment. *See Tow v. Maidman*, 56 Misc.2d 468, 470, 288 N.Y.S.2d 837 (1968); Prosser, *The Nature of Conversion*, 42 Cornell L.Q. 168, 172–73 (1957). *But see Matter of Perfection Technical Service Press, Inc.*, 22 App.Div.2d 352, 354, 256 N.Y.S.2d 166 (1965), *aff'd*, 18 N.Y.S.2d 644, 273 N.Y.S.2d 71, 219 N.E.2d 424 (1966). However, when appellees used the certificate purchased in Shapiro's name to pay Southwestern's note to the Bank, they exercised complete, unau-

thorized dominion over appellant's property to her substantial detriment.

Southwestern owed appellant, its surety on note 1196, the duty of paying the note with its own funds. It had no right to cash the unlawfully purchased certificate of deposit and use the proceeds to satisfy its debt. This was an actionable conversion which entitled appellant to recover in full the value of her certificate. *MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co.*, 193 N.Y. 92, 101–02, 85 N.E. 801 (1908); *McIntyre v. Whitney*, 139 App.Div. 557, 124 N.Y.S. 234 (1910), *aff'd*, 201 N.Y. 526, 94 N.E. 1096 (1911); *Wm. H. Wise & Co. v. Rand McNally & Co.*, 195 F.Supp. 621, 629 (S.D.N.Y.1961).

■ The facts which support appellant's recovery for conversion would support a like recovery for breach of contract. A contract is deemed to incorporate all the rights conferred upon the parties by the laws of the state in which the contract was executed. *N.C. Freed Co. v. Board of Governors of Federal Reserve System*, 473 F.2d 1210, 1215 (2d Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973). When appellant agreed to become a surety for Southwestern, she became entitled to all the rights and benefits which the law gives a surety, including the right to look to Southwestern for payment of note 1196. "Classifying as a surety anyone who is liable centers attention on the vital point that, as between principal and surety, the obligation falls on the principal." 10 Williston on Contracts § 1211 at 687 (3d ed. 1967).

■ In every contract there is an implied covenant of good faith and fair dealing which precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement. *Kirke LaShelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163 (1933). When Southwestern paid note 1196 with appellant's funds instead of with its own, it deprived appellant of her rights and benefits as a surety. Her damages are measured by the value of the collateral which she lost.

We disagree with the district court's holding that appellees had substantially performed the contract with appellant. The doctrine of substantial performance is available only to "the transgressor whose default is unintentional and trivial." *Jacob & Youngs, Inc. v. Kent*, 230 N.Y. 239, 244, 129 N.E. 889 (1921). Assuming for the argument that appellees could have claimed substantial performance had they been willing to recognize appellant's rights as subrogee of the Bank, their refusal to do even this culminated a willful deviation from the terms of the written contract that constituted a clear and substantial breach of its terms.

Because we hold that appellant is entitled to recover the full amount of her certificate of deposit with accrued interest, we need not resolve the parties' differences concerning appellant's claimed right of recovery as a subrogated surety.

Judgment reversed with instructions to enter judgment in favor of appellant Doris Filner and against appellees Samuel Shapiro and Southwestern Alloys Corporation in the sum of $200,000, the amount of appellant's certificate of deposit, with interest, if any, that had accrued thereon prior to August 13, 1975, plus interest on the total of those two amounts from August 13, 1975 to the date of judgment.