UNIVERSAL OUTDOOR, INC., John Cappelli Erectors, Inc., Outdoor Systems Advertising, Inc., Plaintiffs,

v.

CITY OF NEW ROCHELLE, New York, a municipal corporation, Louis Goodman, Building Official of the City of New Rochelle, in his official capacity, and Patrick J. Carroll, Commissioner of Police of the City of New Rochelle, in his official capacity, Defendants.

No. 98 CIV. 3908(CM)(GAY).

United States District Court, S.D. New York.

Oct. 1, 2003.

As Amended Nov. 20, 2003.

Jeffrey Harris, Rubin, Winston, Diercks, Harris & Cooke, Washington, DC, Mark D. Geraghty, Davidoff & Malito LLP, New York City, Philip M. Halpern, Collier, Halpern, Newberg, Nolletti & Bock, L.L.P., White Plains, NY, for Universal Outdoor, Inc., John Cappelli Erectors, Inc., Outdoor Systems Advertising, Inc., plaintiffs.

Henry M. Hocherman, Shamberg, Marwell, Cherneff, Hocherman, Davis & Hollis PC, Mt Kisco, NY, for City of New Rochelle N.Y., a municipal corporation, Louis Goodman, Building Official of the City of New Rochelle in his official capacity, Patrick J. Carroll, Commissioner of Police of the City of New Rochelle, in his official capacity, defendants.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF AND DENYING DEFENDANTS' CROSS–MOTION FOR INJUNCTIVE RELIEF

McMAHON, District Judge.

### FACTS AND PROCEDURAL HISTORY

On July 26, 1996, in furtherance of its urban renewal goals, the City of New Rochelle (the "City") amended its Code to prohibit the erection of billboards ("outdoor advertising structures") within the City (the "Sign Ordinance"). New Rochelle Code § 270–4. A "billboard" is defined as "a sign for a business, profession, activity (commercial or noncommercial), commodity or service not on the premises where the sign is located." § 270–2. The Sign Ordinance also effectively eliminates all existing "off-premise" signs within the City. § 270–16C.(1). On June 2, 1998, outdoor advertising companies Universal Outdoor, Inc. ("Universal Outdoor"), John Cappelli Erectors, Inc. and Outdoor Systems Advertising, Inc., the plaintiffs in this case, filed a complaint in this Court seeking to invalidate the Sign Ordinance. Plaintiffs filed an amended complaint on June 30, 1998. The City filed an answer on July 28, 1998. The parties entered into a Stipulation of Settlement (the "Stipulation"), filed in this Court on October 16, 2000.

The Stipulation provides, *inter alia*, that the plaintiffs may, upon receiving permission from the New York State Thruway

Authority (the "Thruway Authority")[1], erect up to nine billboards in the City, along the "I-95 Corridor."[2] In return, plaintiffs were required simultaneously to remove a certain number of billboards. In addition, some existing billboards were permitted to remain. (Stipulation ¶¶ 4–7). Paragraph 5 of the Stipulation, the key provision for our purposes, provides as follows:

"Plaintiff shall have the right to erect such Billboards (not exceeding nine in number) for which each has obtained approval from the I-95 Agencies in the I-95 Corridor [i.e. the Thruway Authority], subject only to their compliance with such City building codes, rules and regulations of general applicability then in effect governing the structural integrity, safety, and appearance of Billboards and Billboard Structures, and, to the extent required thereby, with the New York State Environmental Quality Review Act [SEQRA] (Article 8 of the Environmental Conservation Law) and the Regulations promulgated pursuant thereto."

In addition, Paragraph 17 of the Stipulation provides:

"In the event of a default by any party in any undertaking or obligation pursuant to this Stipulation the other party shall, in addition to any other remedies available to it, have the right to seek an Order of this Court to enforce this Stipulation, which Order may provide for such other equitable and legal relief as the Court may deem just and proper. In any such event, the party seeking and obtaining such an Order shall be entitled to recover reasonable costs and attorneys' fees."

On March 20, 2001, the City amended its Code to permit the erection of the billboards specified in the Stipulation. (Stauning Aff. ¶ 7). At the request of plaintiff, the City submitted a letter to the Thruway Authority, dated March 5, 2002, supporting Clear Channel's application for construction of those billboards, including one at "81 Rockdale Avenue (Double Face, Located East Side) Block 698, Lot 50." (Shaw Aff. ¶ 10, Exh. 3). The Thruway Authority denied Clear Channel's application because, as stated in its letter to the City, dated March 20, 2002 (the "March 20 letter"), billboards are only permitted "within the boundaries of cities having a population greater than 250,000." (Shaw Aff. ¶ 11, Exh. 4). On October 2, 2002, the City sponsored, through its home rule authority, New York Public Authority Law § 361-1(4)(d), allowing the Thruway Authority to permit the erection of the six billboards mentioned in the March 20 letter. (Stauning Aff. ¶ 7; D. Brief at 3). The law conditioned the "location and erection" of the billboards on the approval of the City. N.Y. Pub. Auth. Law § 361-1(4)(d).

On or about December 23, 2002, plaintiff Clear Channel Outdoor, Inc. ("Clear Channel"), the successor-in-interest company to Universal Outdoor, submitted to the City's Building Department a building permit application for a billboard structure (the "Billboard") and an application for an ad-

---

**1.** The Thruway Authority regulates the erection of any billboards within a certain distance of the Thruway, and requires that an applicant obtain a permit from the Thruway Authority before erecting such structures. N.Y. Pub. Auth. Law § 361–a.

**2.** The "I-95 Corridor" is defined in the Stipulation as "those lands lying in the City within 100 feet of the right-of-way of Interstate Highway 95, as it runs through the City, excluding therefrom, however, any such lands which lie in, or within 50 feet of the boundary of, any residence district designated as such on the official zoning map of the City ..." (Stipulation ¶ 1(j)).

vertising sign to be erected on top of the Billboard. (Shaw Aff. ¶ 13, Exhs. 5 and 6). The building and sign permit applications requested permission to erect the Billboard at "81 Rockdale Avenue, Lot 50." (Id. ¶ 14, Exhs. 5 & 6). The application also included drawings certified by Clear Channel's engineer depicting the site and the proposed location of the Billboard. (Stauning Aff. ¶¶ 10–12). The drawings, which bore the description "Lot 50," depicted a billboard which extended to within approximately thirty-three (33) feet of the residence district boundary on Rockdale Avenue. (Id.¶ 12). No metes and bounds description of the Billboard was provided in the application.

On or about January 31, 2003, the Building Department issued a Building Permit to erect a billboard structure and a Sign Permit for Billboard advertisement face at "81 Rockdale Ave., Lot 50." (Shaw Aff. ¶ 20, Exhs. 7 & 8). On March 17, 2003, Clear Channel received a permit from the Thruway Authority to erect the Billboard at "81 Rockdale Avenue, Lot 50." (Shaw Aff. ¶ 21).

On May 29, 2003, plaintiff arranged for a Code Enforcement Officer at the New Rochelle Bureau of Buildings to conduct an inspection of the Billboard site. (Shepherd Aff. ¶¶ 14–16). Following the inspection, the Code Enforcement Officer advised a Clear Channel representative that Clear Channel could go forward with construction of the Billboard. (Lewis Aff. ¶ 6). Clear Channel began construction of the Billboard on June 1, 2003, and completed construction on June 24, 2003. (Stauning Aff. ¶ 16).

The western side of Rockdale Avenue, across from the Billboard, is completely residential, lined with single family homes. (Shaw Aff. ¶ 24). The property known as "81 Rockdale Avenue" is owned by Mr. Joseph Urbinati, who operates a business at that location known as Morris Park Contracting, a contracting company ("Lot 50"). The adjoining property known as "Rockdale Avenue" (no street address) is also owned by Mr. Urbinati ("Lot 51"). Both Lots are zoned Light Industrial, and Lot 50 is partially improved with an office, garage and parking lot. (Shaw Aff. ¶ 25).

When residents of the single family homes on Rockdale Avenue saw what was being erected across their street, they complained to the City officials and the Building Department. The City received complaints about the siting of the Billboard as early as May 8, 2003. (Shepherd Aff. ¶ 25). The City initially responded to those complaints by telling residents that the Billboard was permitted. (Id). After receiving more complaints, the City dispatched a Building Department official to inspect the area. (Shaw Aff. ¶ 26–27). Observing how close the Billboard was to the residences, the official conducted further research on the siting of the Billboard. (Id ¶ 28).

The City inspector ascertained that the Billboard had in fact been built within thirty-three (33) feet of the Rockdale Avenue residential boundary. (Shaw Aff. ¶ 28). Paragraph 1(j) of the Stipulation expressly provides that no portion of the Billboard face and structure may be within fifty (50) feet of a residential boundary district. Further research by the City revealed the existence of certain Resolutions passed in 1992 and 1996 by the City's Zoning Board of Appeals and Planning Board restricting the size and nature of structure erected at "the upper lot" of 81 Rockdale Avenue, including forbidding structures taller than six (6) feet and prohibiting lighting in the "upper lot." (Id ¶ 29). In addition, the Building Department discovered that there were outstanding, open building permits on the property, which, under New Rochelle's Zoning Code,

meant that no new building permit could issue. (Id ¶ 30).

Based on these apparent violations, the City's Bureau of Buildings sent a letter to Clear Channel revoking the Building and Sign Permits, and directing Clear Channel to remove the Billboard within 30 days of the date of the letter, June 27, 2003, because the Billboard was not in compliance with the October 2000 Stipulation. (Id. ¶ 17, Shaw Aff. ¶ 31, Exh. 14). The violations listed above were the reasons given for revoking the building permit.

Advised of these violations, Clear Channel proposed a modification of the Billboard that would make it comply with the minimum setback requirement provision in the Stipulation. (Stauning Aff. ¶ 23) The proposal, which was delivered to the City on June 26, also stated that the Resolutions did not apply to the Billboard and were not valid reasons for the issuance of the notice of revocation. (Id Aff. ¶¶ 22–23).

By this time, however, the City had discovered a more serious problem with the Billboard—it was not built on Lot 50, the lot on which permission to build had been granted. The City's Official Tax Map clearly shows that the location referred to as "Lot 50" in the drawings accompanying plaintiff's permit application actually consisted of two separate Lots (50 and 51). (Rattner Aff. Exh. 1). The City treats Lots 50 and 51 as two separate Lots for tax purposes. (Rattner Aff. Exhs. 2–4). Plaintiff, apparently unaware of this distinction, applied for a permit for "Lot 50," but actually built the Billboard on Lot 51.

The City therefore rejected plaintiff's offer to modify the Billboard to comply with the setback requirement because it was built on the wrong lot, no certificates of occupancy could be issued and therefore no building permit could be legally issued. (D. Brief at 12).

On July 24, 2003, Clear Channel filed an Order to Show Cause with this Court, seeking to enforce the Stipulation and to enjoin the City from enforcing the revocation of the permits. Following a hearing before this Court on July 24, 2003, the parties agreed to attempt to reach an out-of-court resolution of the matter. Having apparently failed to achieve a resolution, the City has filed a "Cross–Motion" for an order directing the removal of the Billboard.

## DISCUSSION

### I. Jurisdiction

The City first alleges that this Court has no jurisdiction over this dispute because (a) plaintiffs have failed to exhaust their administrative remedies and (b) this is a local land use issue, not implicating enforcement of the Stipulation, over which Federal court has no jurisdiction.

The City is wrong.

■ This Court has jurisdiction to hear the matter pursuant to the terms of the October 2000 Stipulation of Settlement, *Universal Outdoor, Inc., et al. v. City of New Rochelle*, et al., 98 Civ. 3908. Paragraph 17 of the Stipulation provides:

"In the event of a default by any party in any undertaking or obligation pursuant to this Stipulation the other party shall, in addition to any other remedies available to it, have the right to seek an Order of this Court to enforce this Stipulation, which Order may provide for such other equitable and legal relief as the Court may deem just and proper. In any such event, the party seeking and obtaining such an Order shall be entitled to recover reasonable costs and attorneys' fees."

Thus, the Stipulation specifically vests this Court with jurisdiction over any disputes

regarding enforcement of the terms of the Stipulation. *See Kirke v. Howe,* No. 98–9228, 1999 WL 197209, *3, 1999 U.S.App. LEXIS 5697, at *6 (2d Cir. March 26, 1999); *Scelsa v. City University of New York,* 76 F.3d 37, 40 (2d Cir.1996). The Stipulation allows either party to seek such an enforcement Order from this Court. Since the issue at bar is precisely whether New Rochelle has complied with the terms of the Stipulation, the Court is empowered to "provide for such other equitable and legal relief as the Court may deem just and proper."

## II. Procedural Issues

The question then becomes, what exactly is it that the parties are requesting?

The Federal Rules of Civil Procedure do not contain the standard for a "motion to enforce," and there is little jurisprudence on the subject. Ordinarily, a party seeking redress for a violation of a court order files a motion for civil contempt. Clear Channel eschews reliance on that remedy, and the Second Circuit recently acknowledged that "there are many ways in which the performance of a . . . settlement might be called into question before the district court." *Martens v. Thomann,* 273 F.3d 159, 172 (2d Cir.2001). Where, as here, the claim is that one party has breached a settlement stipulation, the Court of Appeals noted that one possibility would be the commencement of an action for breach of contract.

Here, plaintiff has moved for an order enjoining New Rochelle from enforcing its order to take down the billboard and directing it to withdraw its revocation of the building permit. The parties stipulated that either of them could seek an order "to enforce the stipulation," and so I conclude that Clear Channel has actually made application for an order directing New Rochelle to comply with the stipulation. I further conclude that plaintiff is suggest-ing that any such order include the specific directives it seeks because the extremely broad reservation of jurisdiction clause fashioned by the parties permits the Court to order "such other equitable and legal relief as the Court may deem just and proper." Of course, because plaintiff seeks injunctive relief, it must comply with the usual burden of showing both (1) success on the merits, and (2) irreparable injury. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 33 (2d Cir. 1995) (*citing Polymer Technology Corp. v. Mimran,* 37 F.3d 74, 77–78 (2d Cir.1994); *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (1979)) (per curiam).

## Alleged Violations of the Stipulation

The City claims that plaintiff is not entitled to relief and that the Billboard was ordered removed because: (1) it does not comply with a minimum setback requirement set forth in the Stipulation; (2) there are open building permits on the property in violation of the Zoning Code; (3) it violates the New York State Environmental Quality Review Act (SEQRA) inasmuch as no environmental review was conducted prior to its construction; (4) it violates various Zoning Board of Appeals and Planning Board resolutions restricting the size and nature of any structures built at that site; and (5) it was not built on the lot for which permission had been granted. The first four of these reasons were assigned in the original revocation letter; the last has come to light since the commencement of this proceeding. The City maintains that because of these violations, it did not have the power to issue the permits at the time they were issued, and they were therefore properly revoked.

Plaintiff Clear Channel, on the other hand, alleges that the City has acted in

bad faith and in violation of the stipulation by ordering Clear Channel to remove the billboard and threatening state court action in the absence of such removal. In so doing, plaintiff implies that the City's proffered reasons for issuing the removal order were "concocted" (Id.¶ 28), and that their actions were prompted instead by complaints from Rockdale Avenue residents. (Reply Brief at 2). Plaintiff does not, however, dispute that at least two the five grounds now cited by New Rochelle violations of the setback requirement and building on the wrong lotare accurate, and plaintiff argued orally that this Court could find lack of good faith without finding bad faith on the part of New Rochelle.

There is no question that everyone involved here made mistakes. Indeed, all parties conceded as much at oral argument. Clear Channel conceded that the City made a mistake in issuing a building permit for Lot 50 (even though it applied for a building permit for Lot 50) because the intention all along was to build on what turned out to be Lot 51. New Rochelle conceded that Clear Channel erred in designating the lot on which it intended to build as Lot 50. It appears to me that what Clear Channel really wants is an order "reforming" the building permit on the basis of their mutual mistake, and a further order permitting it to remedy its admitted violation of the setback requirements. New Rochelle contends that no such relief should be ordered because the actions it took were not violations of the Stipulation of Settlement.

I conclude that New Rochelle is correct. In order to find that New Rochelle was in default of its obligations under the stipulation of settlement, I would need to find that, in revoking the previously-issued building permit and ordering removal of the billboard, it failed to use its "best efforts in good faith support" of Clear Channel's application and erection of the Billboard. (Stipulation ¶ 4). While not all of the City's arguments are persuasive on this point, two are.

### (1) Setback Requirement

This Court finds that plaintiff's Billboard violates an express term of the Stipulation.

In New York, the meaning of a settlement agreement is construed according to general principles of contract law. *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir.1999); *Bank of New York v. Amoco Oil Co.*, 35 F.3d 643, 661 (2d Cir.1994). The Stipulation expressly requires that the Billboard reach a minimum 50 foot setback from residential district. (Id ¶ 1(j)). Plaintiff acknowledges that the Billboard as erected stands approximately thirty-three (33) feet from the residence district boundary on Rockdale Avenue, in violation of the setback provision. (Stauning Aff. ¶ 11–12).

Plaintiff, however, argues that the Stipulation's "good faith" clause requires the City to allow plaintiff the opportunity to "cure" this violation by making the Billboard smaller. (Main Brief at 8). To that end, plaintiff has submitted an application to the City to modify the Billboard (by reducing the size of the advertising board) so that it complies with the setback provision. (Id).

The duty to execute an agreement in good faith "precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir.1994). Further, "it is the 'intent and reasonable expectations' of parties entering into a given contract that fix the boundaries of the covenant of good faith and fair dealing." *Ari and Co., Inc. v. Regent Int'l Corp.*, 2003, No. 03 CV 0835, WL 21729843, at *3

(S.D.N.Y. July 24, 2003) (*quoting Cross & Cross Props., Ltd. v. Everett Allied Allied Co.*, 886 F.2d 497, 502 (2d Cir.1989)).

■ Unfortunately for plaintiff, the Stipulation—unlike most commercial leases, for example—contains no provisions allowing a party to cure a manifest breach, such as the one here committed by plaintiff. And in New York, "[t]he duty [of good faith] cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract...it cannot add to, detract from, or alter the terms of the contract itself." *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir.1980). So I cannot conclude that New Rochelle has violated the stipulation by refusing to permit Clear Channel to cure this particular violation by reducing the size of the billboard.

### (2) Resolutions and SEQRA

The City also justified revocation of the building permits on the grounds that the plaintiffs have violated various Zoning and Planning Resolutions, as well as the New York State Environmental Quality Review Act. Here, the City is in error.

■ First, the Resolutions cited by the City are not within the plain meaning of the Stipulation's provision for "City building codes, rules and regulations." They are not rules and regulations of "general applicability;" and do not "govern the structural integrity, safety and appearance of Billboards and Billboard Structures." The Resolutions are limited in application to Lots 50 and 51, and address restrictions upon storage and storage facilities in connection with the lot owner's plan to construct a truck storage garage on his property. (D. Brief at Ex. 13). Nor are the Resolutions part of the "City building codes," *see* Code § 111–1, et. seq., and the rules and regulations associated therewith promulgated by the head of the Bureau of

Buildings, Department of Public Works, City of New Rochelle, New York. *See* New Rochelle Code §§ 111–5, 111–7.

More fundamentally, erection of the Billboard does not violate SEQRA for the simple reason that SEQRA does not apply to outdoor advertising. 17 NYCRR 15.13(a); *Niagara Falls Sightseeing By Sheridan, Inc. v. Penn Advertising, Inc.*, 163 A.D.2d 861, 558 N.Y.S.2d 392 (4th Dep't 1990).

### (3) Billboard Location

■ Although not cited in the June 27, 2003 revocation letter, New Rochelle now contends that the it should not have issued the building permit in the first place—and thus cannot be said to have acted in violation of the stipulation's good faith requirement by revoking it—because the permit allows plaintiff to construct the billboard on a lot other than the one where plaintiff intended to, and did, erect the structure. Here, too, the City is correct.

It is undisputed that Clear Channel applied for a permit for Lot 50 and the permit conferred rights to build on (and only on) Lot 50.

Paragraph 5 of the Stipulation requires that the Billboard comply with "City building codes, rules and regulations of general applicability then in effect governing the structural integrity, safety, and appearance of Billboards and Billboard Structures." One provision of the Zoning Code of the City of New Rochelle (the "Zoning Code") prohibits the issuance of a building permit for "any land, building or structure where said action would be in violation of any of the provisions of the [Zoning Code]," such as the utilization of land on which there are open building permits. § 331–136. There were in fact such open permits for Lot 50, (Shaw Aff. ¶ 30), so it was beyond the power of the City Building

Official to issue the permit in the first place. (Id ¶ 31). That being the case, it cannot have been a violation of the Stipulation for New Rochelle to revoke it and order the structure dismantled. *Town of Greenburgh v. Buser*, 285 A.D. 1090, 140 N.Y.S.2d 2 (2d Dep't 1955).

Second, the billboard was not erected on Lot 50, but instead on Lot 51, for which permission had not been granted. New Rochelle's Zoning Code states, "Occupancy, use or any change in the use of the land" without a certificate of occupancy is an illegal use of the land. Zoning Code § 331–137(I). It would be illegal for the City to issue a certificate of occupancy so that the billboard could be used (i.e., have advertising placed thereon), because the as-built billboard is not standing where the City said it should be built. For this reason, too, the City was not in violation of the settlement stipulation when it ordered the billboard taken down.

Despite these self-evident propositions, Clear Channel argues that the city violated its obligations under the settlement stipulation because representatives of New Rochelle "knew at all relevant times the precise location of the Billboard." (Reply Brief at 2). That contention is not necessarily apparent from the record.

Plaintiff did indeed provide the New Rochelle Buildings Bureau with a certified engineer's drawing (Stauning Aff. Exh. M) showing the location of the billboard on the plot of land. And the Buildings Bureau stamped those drawings "approved." However, the drawing does not purport to be a metes and bounds survey, which means that whatever it shows is an approximation. Furthermore, this very drawing erroneously identifies the entire parcel on which the structure is to be erected as Lot 50, not Lots 50 and 51, and plaintiff offers no evidence that the Code Enforcement Officer knew otherwise.

It is also true that a New Rochelle Code Enforcement Officer visited the site shortly before the fittings for the billboard were poured. To the extent that he saw where the footings were being poured, he (and therefore the City) knew exactly "where" the billboard was being erected. However, there is no evidence that he was aware of the precise boundaries between Lots 50 and 51—or, indeed, knew that there were any boundaries of which to be aware—and thus no evidence that this official had any idea that Clear Channel was constructing the billboard on a different lot than the one for which permission had been given.

But even if I assume that City officials were aware of exactly where the billboard was being built—and even if I assume that they knew it was going up in the wrong place—it would not violate the Stipulation for New Rochelle to conclude that it had made a mistake, reverse field and insist on strict compliance with the law. The proper siting of the nine permitted billboards is the essence of the Stipulation. The Stipulation required New Rochelle to issue building permits only subject to compliance with City building codes, rules, and regulations of general applicability governing structural integrity, safety and appearance. Here, issuance of the permit violated one provision of the Building Code, and non-issuance of the certificate of occupancy that was necessary to the Billboard's being used would violate another. It cannot be a violation of the Stipulation for defendant to revoke a permit that it was not required to issue under the Stipulation, or to decline to issue a certificate of occupancy that it would be illegal to issue.

Plaintiff's "bad faith" argument lacks factual merit for another reason. It is undisputed that, if the billboard had been erected on the real Lot 50, Clear Channel would have run afoul of the Thruway Authority's regulation requiring billboards

sited along the perimeter of the New England Thruway to be at least 500 feet apart. New York Code of Rules & Regulations § 150.7(b). The Stipulation provides only that plaintiff has the right to erect (and thus, by implication, that New Rochelle has the obligation to issue building permits for) billboards *"for which [plaintiff] has obtained approval from the I–95 Agencies in the I–95 Corridor."* (Emphasis supplied). Thus, unless and until plaintiff obtained a variance from the Thruway Authority to build on the real Lot 50, it lacked approval from the I–95 Agencies. And New Rochelle was not obligated under the Stipulation of Settlement to issue plaintiff a building permit for Lot 50 without Thruway Authority approval.[3] Again, it cannot possibly violate the settlement stipulation for New Rochelle to revoke a permit that the Stipulation did not oblige it to issue in the first place.

Plaintiff admits that the building permit for Lot 50 was issued in error, because it always intended to erect the billboard where it now stands—which is to say, on Lot 51. But it claims that this "ministerial error" would have been overlooked if neighbors close to the site had not complained vociferously to the City about the presence of the billboard. And it argues that the City's decision to respond to those complaints violated the settlement stipulation because it was an action taken in bad faith.

Plaintiff's position lacks merit. In effect, it asks this Court to estop the City from enforcing the Code and its own rights under the Stipulation of Settlement because its inspectors made a mistake in issuing the permit for the wrong lot and then learned of the error through "not in my backyard" complaints. The City's inspectors did make a mistake. But nothing flows from that.

As this Court has previously held, "A landowner does not have a vested property right to a building permit issued erroneously by a building inspector, and there can be no estoppel against the government in such a situation." *Gottlieb v. Village of Irvington,* 69 F.Supp.2d 553, 556 (S.D.N.Y. 1999). Plaintiff did not receive a building permit that allowed it to erect its billboard where the billboard was in fact erected; and by siting the billboard where it did, plaintiff actually disentitled itself to a building permit for that location pursuant to the settlement agreement. Thus, plaintiff should not have received a building permit from the City. *Parkview Assocs. v. City of New York,* 71 N.Y.2d 274, 525 N.Y.S.2d 176, 178, 519 N.E.2d 1372 (1988) (a building permit is void *ab initio* where it "fails to conform with applicable provisions of law."); *Brock v. Zoning Bd. of Appeals of the Town of Queensbury,* 237 A.D.2d 670, 653 N.Y.S.2d 988, 990 (3d Dep't 1997)(upholding revocation of permits issued on basis of applicant's inaccurate representations). As a result, the City is entitled to enforce its legal right to revoke its building permit. *Town of Greenburgh v. Buser,* 285 A.D. 1090, 140 N.Y.S.2d 2 (2d Dep't 1955); *McGannon v. Bd. of Trustees for Vill. of Pomona,* 239 A.D.2d 392, 657 N.Y.S.2d 745 (2d Dep't 1997). It may not be estopped from doing so, despite the fact Clear Channel has substantially completed construction of the Billboard in reliance on the permit. *Parkview Assoc.,* 525 N.Y.S.2d at 179, 519 N.E.2d 1372. The fact that neighbors' complaints led the City to discover its error does not override the settled rule

---

**3.** Plaintiff never sought such a variance and obviously preferred not to, since it selected the site on which it built in order to avoid having to approach the Thruway Authority for a variance.

that a municipality cannot be estopped by its mistake from enforcing the law.[4]

Plaintiff's contention that the building permit should, in effect, be reformed to conform to the actual site where "everyone knew" the billboard was going to go up is based on the wholly inapposite case of *Jackson ex dem. M'Naughton v. Loomis,* 18 Johns. 449, 1820 N.Y. LEXIS 54 (N.Y.Sup.1820), *aff'd,* 18 Johns. 81, 1822 N.Y. LEXIS 40 (N.Y.1822). In *Jackson,* the New York Supreme Court ordered reformation of a mortgage where the parties had committed a scrivener's error and misstated the property to be encumbered. The simple and dispositive distinction between *Jackson* and this case is that all parties in *Jackson* were private parties. Here, the mistaken party is a municipality, which cannot be bound to or estopped by its errors.

*Appropriate Relief*

Because New Rochelle has not violated the Stipulation of Settlement, no directive need issue from this Court. Plaintiff is not entitled to an injunction undoing the revocation of the building permit or the order directing it to tear down the billboard.

■ However, I do not believe it appropriate to enter the order contemplated by the cross-motion—that is, an injunction directing Clear Channel to comply with the removal notice and take down the billboard. The parties charged this Court with continuing jurisdiction to enforce compliance with the Stipulation of Settlement. I have concluded that there was no non-compliance, as alleged by plaintiff. There my retained jurisdiction ends. I do not read Paragraph 17 of the Stipulation as a wholesale supplanting of the usual and customary procedures for non-compliance by plaintiffs with a lawful order of the City of New Rochelle—if there be any non-compliance after the issuance of this opinion. Moreover, to the extent that Clear Channel is in violation of something right now, it is in violation of the revocation and removal order—not of the Stipulation of Settlement. New Rochelle's redress for continued non-compliance lies in another Court.

Plaintiff's motion is denied. Defendant's cross-motion is dismissed.

*Attorney's Fees*

Paragraph 16 of the Stipulation provides "Each party shall bear its own expenses of this litigation including, without limitation, all court costs and attorneys' fees."

Paragraph 17 provides, "...the party seeking and obtaining such an Order [enforcing the Stipulation] shall be entitled to recover reasonable costs and attorneys' fees."

The fee-shifting provision of Paragraph 17 applies only to a party who both seeks and obtains an order enforcing the stipulation. Neither party has obtained such an order, because the Court finds no violation of the Stipulation by either side. Therefore, each side shall bear its own costs and attorneys' fees.

This constitutes the decision and order of the Court.

The Clerk of the Court is directed to re-close this file.

---

4. Assuming arguendo that both parties were under the mistaken assumption that "Lot 50" described the entire property leased by Clear Channel, plaintiff—which had both the motive and the opportunity to perform due diligence—was in the best position to uncover the error prior to commencing construction.